2

United States District Court
Southern District of Texas
FILED

MAR 2 0 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EUGENIO REYNA MONTOYA,
ERASMO ORNELAS-ALANIS, and
SALOME RODRIGUEZ-CARACHEO,
In their own name and right,
and on behalf of all others
similarly situated,

v. C.A. No. B-02-026

E.M. TROMINSKI, INS DISTRICT
DIRECTOR, and
JOHN ASHCROFT, ATTORNEY
GENERAL OF THE UNITED STATES.

**REQUEST FOR ORDER TO SHOW CAUSE, OR WRIT, IN ACCORDANCE WITH 28 U.S.C. §2243 AND MOTION FOR PRELIMINARY INJUNCTION WITH INCORPORATED POINTS AND AUTHORITIES IN SUPPORT THEREOF**

The named petitioners, through the undersigned, request that this Honorable Court issue either the requested writs of habeas corpus, under 28 U.S.C. §2241, or an order to show cause, and conduct a prompt hearing on their petitions for a writ of habeas corpus, in accordance with 28 U.S.C. §2243, which provides, in relevant part:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto. The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed. The person to whom the writ or order is directed shall make a return certifying the true cause of the detention. When the writ or order is returned a day shall be set for hearing, not more than five days after the return unless for good cause

> additional time is allowed. Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.

Further, Petitioners seek a preliminary injunction, on their own behalf and on behalf of the class they seek to represent, and file the instant Points and Authorities, in support of their petitions for a writ of habeas corpus, [1] and of said motion.

## I. ISSUES ADDRESSED

**A. AS HAS BEEN ALMOST UNIVERSALLY HELD BY THE FEDERAL JUDICIARY, 8 U.S.C. §1226(c)(1), WHICH MANDATES THE DETENTION OF CERTAIN IMMIGRANTS PENDING REMOVAL PROCEEDINGS, WITHOUT INDIVIDUALIZED BOND HEARINGS TO DETERMINE WHETHER THEY ARE A DANGER TO SOCIETY OR FLIGHT RISK, VIOLATES BOTH SUBSTANTIVE AND PROCEDURAL DUE PROCESS AS APPLIED TO THE NAMED PETITIONERS HEREIN, AND THE CLASS OF LPRs THEY SEEK TO REPRESENT.**

**A. BY VIRTUE OF THEIR STATUS AS LAWFUL PERMANENT RESIDENTS, PETITIONERS ARE ENTITLED TO PROCEDURAL DUE PROCESS IN DETERMINING WHETHER THEY ARE ENTITLED TO BOND DURING REMOVAL PROCEEDINGS**

**B. SIMILARLY, PETITIONERS HAVE BOTH A FUNDAMENTAL RIGHT TO REJOIN FAMILY IN THE U.S., AND A LIBERTY INTEREST IN BEING FREE FROM ARBITRARY DETENTION, SUCH THAT THEY ARE ENTITLED TO SUBSTANTIVE DUE PROCESS BEFORE THESE RIGHTS AND INTERESTS MAY BE ABRIDGED**

**B. PETITIONERS AND THE CLASS THEY SEEK TO REPRESENT ARE ENTITLED TO IMMEDIATE, PRELIMINARY RELIEF.**

## II. ARGUMENT

The existence of serious constitutional problems mandates that a Court seek a construction of the statute which would avoid them.

---

[1] On March 14, 2002, the BIA denied Petitioner Reyna's bond appeal, solely on the basis of §1226(c). Petitioners' Exhibit A, herein incorporated by reference.

*Webster v. Reproductive Health Services*, 492 U.S. 490,562 (1989) (where fairly possible, statutes must be construed to avoid serious constitutional problems); *INS v. Cardoza-Fonseca*, 94 L.Ed2d 434,459 (1987) (reaffirming "the long-standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien."). *See also, Zadvydas, v. Underdown*, 121 S.Ct. 2492 (2001), wherein the Supreme Court read a "reasonable time" limitation into INS' authority to detain former LPRs under deportation orders which could not be immediately effectuated. As the Court reasoned, *id.* at 2498 (some internal citations omitted):

> "[I]t is a cardinal principle" of statutory interpretation, however, that when an Act of Congress raises "a serious doubt" as to its constitutionality, "this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." ... We have read significant limitations into other immigration statutes in order to avoid their constitutional invalidation. See United States v. Witkovich, 353 U.S. 194, 195, 202, 77 S.Ct. 779, 1 L.Ed.2d 765 (1957) (construing a grant of authority to the Attorney General to ask aliens whatever questions he "deem [s] fit and proper" as limited to questions "reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue"). For similar reasons, we read an implicit limitation into the statute before us. In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal- period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.

This Court must therefore seek a construction of §1226(c)(1) which avoids these problems, even if, as in *Zadvydas*, this requires the Court to read additional limitations into the statute. Here, the Court should read into the statute a limitation that it was not intended to be applied to lawful permanent residents.

In the alternative, it is urged that the Court must find, as have all the U.S. Courts of Appeals which have decided the issue after the Supreme Court decided *Zadvydas*, that, as applied to permanent residents, §1226(c)(1) offends Due Process.

A statute may violate Due Process on its face, or, (as Petitioners urge herein), as applied in a particular situation. *See, Troxel v. Granville*, 120 S.Ct. 2054 (2000) (As applied, Washington statute providing that any person may petition court for visitation at any time, and that court may order visitation rights for any person when visitation may serve best interest of child, violated substantive due process rights of mother). *See also, Zadvydas, supra,* applying Substantive Due Process analysis, and reaffirming the continued vitality of that doctrine, even for non-citizens.

Following *Zadvydas,* three Courts of Appeals have found §1226(c)(1) unconstitutional as applied to LPRs. *Hoang v. Comfort,* __ F.3d __, (10th Cir. 2002) 2002 WL 339348; *Kim v. Ziglar,* 276 F.3d 523 (9th Cir. 2002), and *Patel v. Zemski*, 275 F.3d 299 (3rd Cir. 2001). [2]

In *Hoang*, the Tenth Circuit found that mandatory detention violated the Substantive Due Process of lawful permanent residents. In *Kim,* the Ninth Circuit found a Procedural Due Process violation, and in *Patel,* the Third Circuit found that it violated Substantive Due Process. In each case, individualized bond hearings were ordered, to determine whether the LPRs presented flight risks, or were a danger to the community.

---

[2] The sole Court of Appeals to reach a contrary conclusion not only did so prior to *Zadvydas*, but in a situation where the person conceded that he was not only subject to deportation, but ineligible for any form of relief. *See, Parra v. Perryman,* 172 F.3d 954 (7th Cir. 1999).

**A. BY VIRTUE OF THEIR STATUS AS LAWFUL PERMANENT RESIDENTS, PETITIONERS ARE ENTITLED TO PROCEDURAL DUE PROCESS IN DETERMINING WHETHER THEY ARE ENTITLED TO BOND DURING REMOVAL PROCEEDINGS**

As concluded in *Kim, supra*, as applied to LPRs held indefinitely, and without bail, during removal proceedings, 8 U.S.C. §1226(c)(1) violates the due process right to individualized determinations of whether they pose a risk of flight or a danger to community. Notably, in *Kim,* the District Court had ordered, and the government had provided, a bond hearing. As a result of that hearing, the resident had been released on bond. The Court concluded that there was nonetheless a live controversy, since INS said that it would take Mr. Kim back into custody if the District Court's Order were reversed. *Id.* at 526. The Court sustained the Order, *id.* at 530, on the basis that, as applied to LPRs, it violated Due Process:

> In this case, as in *Zadvydas,* it is clear that the statute authorizing detention is civil and regulatory, not criminal or punitive. The detention authorized by § 1226(c) is ostensibly designed to ensure that aliens are removed, and it is established law that removal proceedings are civil. *See INS v. Lopez-Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). Following *Zadvydas,* we thus must analyze § 1226(c) to determine whether the government has provided a sufficiently strong "special justification" to justify civil detention of a lawful permanent resident alien.
>
> The government advances five justifications for no-bail civil detention under § 1226(c): (1) preventing criminal aliens from absconding so that they can be expeditiously removed as required by law, (2) protecting public safety from the presence of potentially dangerous criminal aliens, (3) making the removal of criminal aliens a top priority of immigration enforcement, (4) correcting the failure of the prior laws which permitted release on bond, and (5) repairing damage to America's immigration system.

The Court examined these justifications, and found them inadequate

under the majority opinion in *Zadvydas*. *Id.* at 535. However, the Court did not stop there. In addition, the Court concluded that the statute failed muster under the reasoning of Justices Kennedy and Rehnquist, who argued that the "proper constitutional test was whether the detention was arbitrary or capricious." *Id.* at 535-36.

In *Patel, supra,* the challenge was framed as an "as applied" violation of both Substantive and Procedural Due Process. The Court upheld the Substantive Due Process rights claim, and thus did not reach the procedural issues. *Id.* at *5 (footnote omitted):

> "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 306 (1993). Although due process rights can be denied to aliens seeking admission to the United States, *Landon v. Plasencia*, 459 U.S. 21, 32 (1982), aliens who have entered the country are entitled to the protection of the Due Process Clause whether their presence in this country is lawful or not. See *Zadvydas v. Davis*, 121 S.Ct. 2491, 2501 (2001) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); Landon, 459 U.S. at 32 ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly."). Thus Patel, a lawful permanent resident, is entitled to due process protection against unlawful or arbitrary restraint, a legal proposition the government does not contest.

Thus, the Court may find a Due Process violation, based either on Petitioners' Substantive, or Procedural, Due Process rights.

**B. SIMILARLY, PETITIONERS HAVE A FUNDAMENTAL RIGHT BOTH TO REJOIN FAMILY IN THE U.S., AND IN BEING FREE FROM ARBITRARY DETENTION, WHICH ENTITLES THEM TO SUBSTANTIVE DUE PROCESS BEFORE THESE RIGHTS MAY BE ABRIDGED.**

As held in the above cited cases, LPRs have a fundamental right to live and work in this country, and to remain here with their families, free from arbitrary detention. *Hoang, supra,* at *7:

> [W]e conclude that the petitioners have a fundamental liberty interest in freedom from detention pending deportation proceedings that may only be infringed upon in certain limited circumstances.

*See also, Kim, supra* at 535, ("We are reluctant to uphold civil detention impinging on fundamental liberty interests, based on a government policy the need for which the implementing agency has itself questioned"); and *Patel, supra,* at 308-309. *See also, Landon v. Plasencia,* 459 U.S. 21,34 (1982):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

In reaching this conclusion, the Supreme Court cited *Bridges v. Wixon,* 326 U.S. 326 U.S. 135,154 (1945), as well as *Moore v. City of East Cleveland,* 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972), both of which recognize family relationships as fundamental rights.

The existence of these fundamental rights, which, it must be emphasized, are enjoyed only by those who have a *right* to reside in this country, (i.e., by lawful permanent residents), triggers a "compelling state interest" analysis in determining whether a given abridgement passes Substantive Due Process muster. *Hoang* at *5-*7, *Patel* at 307-308; *See also, Washington v. Glucksberg,* 521 U.S. 702,721 (1997):

> As we stated recently in [*City of Boerne v.*] *Flores,* the

> Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." 507 U.S., at 302, 113 S.Ct., at 1447.

As concluded in *Hoang, supra,* and *Patel, supra*, the statute at issue does not meet this test.

**B. PETITIONERS AND THE CLASS THEY SEEK TO REPRESENT ARE ENTITLED TO IMMEDIATE, PRELIMINARY RELIEF.**

Consequently, Petitioners, in their own name, and on behalf of the class they seek to represent, seek immediate, preliminary relief. To be eligible for preliminary relief, Petitioners must make certain showings. As reiterated in *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047 (5th Cir. 1997), preliminary relief should only be granted where the movant demonstrates substantial likelihood of success on the merits, substantial threat of irreparable harm if such relief is not granted, that the threatened injury outweighs any harm that may result to the opposing party, and that such an action will not undermine the public interest. *See also*, Fed. Rules of Civil Procedure, Rule 65. These criteria are met herein.

**1. LIKELIHOOD OF SUCCESS ON THE MERITS**

As seen from the decisions in *Hoang, Kim,* and *Patel,* Petitioners have an excellent chance of success on the merits. Further, the Fifth Circuit reminded INS that "the executive branch, of course, has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review." *Loa-Herrera v. Trominski,* 231 F.3d 984,991 (5th Cir. 2000).

**2. THERE IS A SUBSTANTIAL RISK OF IRREPARABLE HARM IF PRELIMINARY RELIEF IS NOT GRANTED**

The detention of Petitioners, without bond, and without access to

a hearing before an impartial adjudicator, is causing irreparable harm, both to them, and to their U.S. citizen families, who depend on them for financial and moral support. The harm caused thereby increases with each passing day, and is irreparable, in that there is no means of retroactively restoring the time and income lost.

**3. THE THREATENED INJURY FAR OUTWEIGHS ANY INJURY TO RESPONDENTS OF GRANTING THE REQUESTED RELIEF**

Other than the trivial inconvenience of conducting a few additional hearings, there is absolutely no harm which will accrue to the Respondents, or the public, if this Court grants Petitioners the right to a hearing before an Immigration Judge or other impartial adjudicator on their requests for bond. The issues of whether they present a flight risk, or a threat to the community, will be addressed at said hearings. And unless the Government now claims that the proceedings currently in place for making such determinations are ineffective, they cannot claim that they will be "harmed" by their utilization in these cases.

**4. THE REQUESTED RELIEF IS IN THE PUBLIC INTEREST**

To the contrary, such relief will benefit not only the Petitioners, and their families, but the public at large. It will further the impression, as well as the reality, of justice. It will also forestall the necessity that their families seek public assistance, and ensure that Petitioners are able to receive full and fair opportunity to press any arguments that they are not removable as charged, and to pursue any applications for relief from removal. [3]

Petitioners therefore request that their Petitions for Writs of

---

[3] Even though he had been granted relief, and ordered released on recognizance, Petitioner Gonzalez-Noyola, in CA B-01-058, who was also a permanent resident, detained under §1226(c)(1), eventually gave up his fight to save his LPR status, simply because he could no longer tolerate his prolonged detention, without bond.

Habeas Corpus be granted, and that Respondents be ordered to conduct individualized bond hearings in their cases.

In addition, and on behalf of the class they seek to represent, Petitioners request that both a preliminary and permanent injunctions issue, restraining and enjoining Respondents from detaining LPRs under 8 U.S.C. §1226(c)(1), without providing a bond hearing before an Immigration Judge.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178
Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax)

**CERTIFICATE OF SERVICE**

I, Lisa S. Brodyaga, hereby certify that a copy of the foregoing, with Exhibit A, and the proposed Order, were personally delivered to the office of Lisa Putnam, SAUSA, at 1701 Zoy St., Harlingen, Texas, this 20th day of March, 2002.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EUGENIO REYNA MONTOYA, | ) | |
| ERASMO ORNELAS-ALANIS, and | ) | |
| SALOME RODRIGUEZ-CARACHEO, | ) | |
| In their own name and right, | ) | |
| and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| v. | ) | C.A. No. B-02-026 |
| | ) | |
| E.M. TROMINSKI, INS DISTRICT | ) | |
| DIRECTOR, and | ) | |
| JOHN ASHCROFT, ATTORNEY | ) | |
| GENERAL OF THE UNITED STATES. | ) | |
| | ) | |

PETITIONERS' EXHIBIT "A" IN SUPPORT OF

REQUEST FOR ORDER TO SHOW CAUSE, OR WRIT,
IN ACCORDANCE WITH 28 U.S.C. §2243
AND MOTION FOR PRELIMINARY INJUNCTION
WITH INCORPORATED POINTS AND AUTHORITIES IN SUPPORT THEREOF

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File: A36 740 936 - Harlingen

Date: MAR 14 2002

In re: EUGENIO REYNA-MONTOYA

IN BOND PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Thelma O. Garcia, Esq.

ON BEHALF OF SERVICE: Cheri L. Jones
Assistant District Counsel

APPLICATION: Change in custody status

The respondent has timely appealed an Immigration Judge's bond redetermination dated November 30, 2001, finding the respondent subject to the mandatory detention provision of section 236(c)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c)(1)(B), and finding the Immigration Court to lack jurisdiction to redetermine the conditions of his custody. *See* 8 C.F.R. § 3.19(h)(2)(i)(D). The appeal will be dismissed.

The respondent, a native and citizen of Mexico, does not deny that he was convicted[1] of possession of marijuana on November 1, 2001, for which he was sentenced to probation for a period of three years. The Immigration Judge found the mandatory detention provisions of section 236(c) of the Act applicable. On appeal, the respondent argued that they are not applicable because he has not been confined or restrained as a result of his criminal conviction.

We find that the respondent is subject to the mandatory detention provisions. In *Matter of West*, Interim Decision 3438, at 7 (BIA 2000), we specifically noted that the "released after" language in the context of section 236(c) of the Act "can also refer to release from physical custody following arrest." In that case, the mandatory detention provisions did not apply to the alien, because he was released prior to the expiration of the Transition Rules.

In the case, before us, the respondent was arrested, released, convicted, and sentenced to probation after the Transition Rules expired. Therefore, we find that his release from confinement after being arrested

[1] For purposes of his bond appeal, the respondent does not dispute that a Texas deferred adjudication is a conviction for immigration purposes. *See Matter of Punu*, Interim Decision 3364 (BIA 1998)

subjects him to the mandatory detention provisions. As such, we agree with the Service that the respondent is subject to mandatory detention under section 236(c) of the Act, and is thus not within the Immigration Judge's custody jurisdiction. *See Matter of Adeniji*, Interim Decision 3417 (BIA 1999) (section 236(c) of the Act is not applicable to aliens released from criminal custody prior to October 9, 1998).

ORDER: The appeal is dismissed.

FOR THE BOARD