IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 5 2002

Michael N. Milby
Clerk of Court

EUGENIO REYNA-MONTOYA,          )
ERASMO ORNELAS-ALANIS, and      )
SALOME RODRIGUEZ-CARACHEO,      )
                                )
     Petitioners,               )
                                )
v.                              )          CIVIL ACTION NO.
                                )             B-02-026
E.M. TROMINSKI, INS DISTRICT    )
DIRECTOR, and                   )
JOHN ASHCROFT, ATTORNEY         )
GENERAL OF THE UNITED STATES    )
                                )
     Respondents.               )
_____ )


RESPONDENTS' MOTION TO DISMISS AND
RESPONSE TO PETITONERS' PETITION
FOR WRIT OF HABEAS CORPUS AND CLASS ACTION COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF


     COME NOW, the Respondents, by and through Michael T.

Shelby, United States Attorney for the Southern District of

Texas, and presents this motion to dismiss and response to the

Petition for Writ of Habeas Corpus and Class Action Complaint

for Declaratory and Injunctive Relief filed by the Petitioners

Eugenio Reyna-Montoya ("Reyna"), Erasmo Ornelas-Alanis

("Ornelas"), and Salome Rodriguez-Caracheo ("Rodriguez")

(collectively referred to as "Petitioners").

## BACKGROUND FACTS

### Eugenio Reyna-Montoya:

Reyna was admitted to the United States as a lawful permanent resident on March 12, 1981.  On November 1, 2001, he was convicted in Brooks County, Texas of possession of 27 pounds of marijuana. For that offense, adjudication of Reyna's guilt was deferred and he was sentenced to three years probation.

Reyna was arrested by the Immigration and Naturalization Service ("Service") on November 1, 2001, and placed in removal proceedings based on the drug conviction.  He was detained at the Port Isabel Service Processing Center ("PISPC") and, because of his conviction record, no bond was set for his release. After a bond hearing held by an immigration judge on November 30, 2001, the immigration judge determined that he was ineligible for release under the provisions of the Immigration and Nationality Act ("INA").  §236(c)(1)(B) of INA.  Reyna appealed that decision and on March 14, 2002, the Board of Immigration Appeals ("Board") dismissed his appeal, agreeing with the immigration judge that Reyna's detention was mandated under INA §236(c)(1)(B).

2

By order dated March 5, 2002, an immigration judge ordered Reyna be removed from the United States. He timely filed his appeal on April 3, 2002.

**Erasmo Ornelas-Alanis:**

Ornelas was admitted to the United States as a lawful permanent resident on October 10, 1978. On December 2, 1994, he was convicted in Brooks County, Texas, of possession of 94 pounds of marijuana. For that offense, adjudication of Ornelas' guilt was deferred and he was sentenced to seven years probation. Ornelas also admits the following convictions: burglary of a habitation (offense occurred in 1989), possession of a controlled substance (offense occurred in 1990) and burglary of a habitation (offense occurred in 1991) all running currently with one another. Ornelas was also convicted in Dawson County, Texas, for burglary of a vehicle in 1983.

Ornelas was arrested by the Service on January 25, 2002, and placed in removal proceedings based on the 1994 drug conviction. He was detained at PISPC and, because of his conviction record, no bond was set for his release. After a bond hearing held by an immigration judge, Ornelas' bond was set

3

at $1500.  On January 22, 2002, Ornelas posted the bond and was
released from Service custody.[1]


**Salome Rodriguez-Caracheo:**

Rodriguez was admitted to the United States as a lawful
permanent resident on June 1, 1984.  On June 19, 1998, he was
convicted in Cameron County, Texas, of possession of marijuana
in an amount between 50 and 2000 pounds.  For that conviction,
Rodriguez was sentenced to six years in prison, but the sentence
was suspended and he was placed on six years probation.
Rodriguez has also been convicted of assault causing bodily
injury committed in 1994.

Rodriguez was arrested by the Service on January 17, 2002,
and placed in removal proceedings based on the 1998 drug
conviction.  He was detained at PISPC and, because of his
conviction record, no bond was set for his release.  After a
bond hearing held by an immigration judge, Rodriguez' bond was
set at $1500.  On March 5, 2002, Rodriquez posted the bond and
was released from Service custody.

---

[1] At this time, the Service is appealing the immigration judge's
decision to reduce the bond to $1500.

**ARGUMENT**

I.   **CLAIMS ON BEHALF OF PETITIONERS SHOULD BE DISMISSED AS MOOT.**

Petitioners claim that their detention without a bond is a violation of their due process rights.  These claims should be dismissed as moot, as applied to Ornelas and Rodriguez.

Ornelas and Rodriguez have been given a bond by the immigration judge and both have paid the bond.  Both Ornelas and Rodriguez are no longer in Service custody and, therefore, any claim arising out of their detention is moot.

II.  **SECTION 236(c) OF THE IMMIGRATION AND NATIONALITY ACT (8 U.S.C. §1226(c) COMPORTS WITH SUBSTANTIVE DUE PROCESS BECAUSE CONGRESS MAY LEGITIMATELY BAR DANGEROUS CRIMINALS FROM ROAMING THE UNITED STATES**

Section 236(c) of the INA comports with substantive due process as a legitimate method of protecting the United States general population from dangerous criminal.

A.  **Applicable Statute**

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-

5

208, 110 Stat. 3009 (1996), which substantially revised the INA.
Among those revisions was the new INA §236(a) which provides
that an alien, whether or not he is seeking admission, may be
held by the Service pending a determination of whether that
alien is to be removed from the United States.   8 U.S.C.
§1226(a) (Supp. 1997).   The Attorney General may release such
aliens on bond or conditional parole.   8 U.S.C. §1226(a)(2)(A) &
(B).

As an exception to the Attorney General's authority to
release an alien under INA §236(a), Congress established INA
§236(c)(1) that <u>requires</u> the Attorney General to take into
custody certain aliens.   INA §236(c)(1) provides:

> The Attorney General shall take into custody any
> alien who-
>
> (A) is inadmissible by reason of having committed
> any offense covered in section 212(a)(2) [8
> U.S.C. §1182(a)(2)];
>
> (B) is deportable by reason of having committed
> any offense covered in section 237(a)(2)(A)(ii),
> (A)(iii), (B), (C), or (D) [8 U.S.C.
> §1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)]
>
> (C) is deportable under section 237(a)(2)(A)(i)
> [8 U.S.C. §1227(a)(2)(A)(ii)] on the basis of an
> offense for which the alien has been sentence[d]
> to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 212(a)(3)(B) [8
> U.S.C. §1182(a)(3)(B),

6

> when the alien is released, without regard to whether
> the alien is released on parole, supervised release,
> or probation, and without regard to whether the alien
> may be arrested or imprisoned again for the same
> offense.

INA §236(c)(1), 8 U.S.C. §1226(c)(1) (Supp. 1997). Aliens taken

into custody pursuant to §236(c)(1) may obtain release only if:

> (1) the Attorney General decides pursuant to
> section 3521 of title 18, United States
> Code, that release of the alien from custody
> is necessary to provide protection to a
> witness, a potential witness, a person
> cooperating with an investigation into major
> criminal activity, or an immediate family
> member or close associate of a witness,
> potential witness, or person cooperating
> with such an investigation"; and (2) "the
> alien satisfies the Attorney General that
> the alien will not pose a danger to the
> safety of other persons or of property and
> is likely to appear for any scheduled
> proceeding.

INA §236(c)(2), 8 U.S.C. §236(c)(2) (Supp. 1997). Section 236

allows for no other bases for the release of aliens detained

pursuant to §236(c)(1).

**B.    Petitioners' Purported Liberty Interest Is Limited**

The Supreme Court has explained that the first step in a

substantive due process claim is to define the alleged right at

issue:

> "Substantive due process" analysis must
> begin with a careful description of the
> asserted right, for "the doctrine of
> judicial self-restraint requires us to

7

> exercise the utmost care whenever we are
> asked to break new ground in this field."

Flores v. Reno, 507 U.S. 202, 302 (1993), quoting Collins v.

Harker Heights, 503 U.S. 115, 125 (1992).

Petitioners' right to be at liberty in general is not at

issue; rather, at issue is their right to be at liberty in the

United States pending removal proceedings.  The Service's

interest in Petitioners is limited:  the Service is required to

detain Petitioners only pending their removal proceedings.  "The

private interest here is not liberty in the abstract, but

liberty in the United States by someone no longer entitled to

remain in this country but eligible to live at liberty in his

native land. . . ." Parra v. Perryman, 172 F.3d 954, 958 (7th

Cir. 1999).  Put another way, at issue in this case is the right

of lawful permanent resident aliens - who are removable on the

basis of serious criminal offense or serious criminal behavior,

and who are otherwise ineligible for discretionary relief from

removal - to be at liberty in the United States pending their

removal proceedings.

> **C.    The Proper Standard Of Review For A Facial Challenge
> To INA §236(c) Is The "Facially Legitimate and Bona
> Fide Reason" Standard**

Petitioners attempt to challenge INA §236(c)(1), alleging

that it is unconstitutional.  A party raising a facial challenge

to a statute bears a heavy burden of proof.  <u>Reno v. Flores</u>, 507
U.S. 292, 300 (1993).  The challenging party "must establish
that no set of circumstances exists under which the [statute]
would be valid."  <u>Flores</u>, 507 U.S. at 301.

Because the purported interest of Petitioners is their
interest in being at liberty in the United States while they
undergo removal proceedings in which they will be ineligible for
relief from removal, it is clear that Congress' plenary
authority in immigration policy is at issue.  The Supreme Court
has repeatedly acknowledged the paramount authority of the
executive and legislative branches of our national government
with respect to immigration matters and the correspondingly
limited role of the judiciary.  <u>See</u>, <u>e.g.</u>, <u>Fiallo v. Bell</u>, 430
U.S. 787, 792 (1977); <u>Mathews v. Diaz</u>, 426 U.S. 67, 81-82
(1976); <u>Harisiades v. Shaughnessy</u>, 342 U.S. 580, 588-89 (1952);
<u>see also</u> <u>Fonseca-Laite v. INS</u>, 961 F.2d 60, 62 (5th Cir. 1992).
"Excludable aliens have fewer rights than do deportable aliens,
and those seeking initial entry have the fewest of all."
<u>Garcia-Mir v. Smith</u>, 766 F.2d 1478, 1484 (11th Cir. 1985), <u>cert.</u>
<u>denied</u>, 469 U.S. 1311 (1985).

The Supreme Court has stated that in evaluating immigration
legislation, such legislation is subject to the most deferential
scrutiny.  The procedures attendant to the removal of aliens

9

must be upheld if supported by "a facially legitimate and bona fide reason." Fiallo, 430 U.S. at 794; Mathews, 426 U.S. at 77; Garcia-Mir, 744 F.2d at 1478; Jean v. Nelson, 727 F.2d 957, 977 (11th Cir. 1984), afield on other grounds, 472 U.S. 846 (1985); see also Flores, 507 U.S. at 306; Richardson v. Reno, 162 F.3d 1338, 1376 n.179 (11th Cir. 1998) ("Richardson I") ("Classifications in the immigration context are subject to the rational-basis standard. . ."), vacated on other grounds, 526 U.S. 1142 (1999), reaffirmed and reinstated 180 F.3d 1311 (11th Cir. 1999) ("Richardson II"), cert. denied, ___ U.S. ___, 120 S.C. 1529 (2000). It is well-established that the government has no obligation to produce evidence to sustain the rationality of a statutory classification. Heller v. Doe, 509 U.S. 312, 319 (1993). Legislation regulating immigration bears a "strong presumption of validity," and those attacking the rationality of the legislation have "the burden to negate every conceivable basis which might support it," whether or not the basis has a foundation in the record. Id. at 320; see also FCC v. Beach Communications, Inc., 508 U.S. 307, 314-15 (1993).

The Supreme Court has recognized a general liberty interest in freedom from restraint without cause. See Foucha v. Louisiana, 504 U.S. 71, 80 (1992). That general liberty interest is not at issue; rather at issue is the right of a

10

lawful permanent resident to be at liberty in the United States
pending his removal proceedings initiated on the basis of a
serious criminal conviction or serious criminal behavior. See
Parra, 172 F.3d at 958. Thus, there is no doubt but that
Congress is acting within its plenary immigration authority by
deciding that release from detention pending removal proceedings
will not be available for certain criminal aliens, and its
choices are reviewed only under a highly deferential level of
review.

> D.  **Congress Had A Facially Legitimate And Bona Fide
>     Reason For Enacting The Mandatory Detention Provision
>     Of INA §236(c)(1)**
>
>    1.  **Congress had a legitimate interest in securing
>        the presence of criminal aliens at removal
>        hearings**

The Supreme Court has previously noted that Congress has a
particular interest in preventing the admission of aliens deemed
to be dangerous within the judgment of Congress, Carlson v.
Landon, 342 U.S. 524, 541-42 (1952), and that Congress is free
to determine in which categories of cases bail may be set.
Carlson, 342 U.S. at 545. The Supreme Court has continued to
recognize the permissibility of such a congressional purpose.
United States v. Salerno, 481 U.S. 739, 754 (1987); see also
Parra, 172 F.3d at 758. The fact that Congress has now elected
to delineate specifically in which categories of cases aliens

11

may not obtain release is only a further extension of
congressional authority to delineate those cases where release
may be obtained.   Garcia-Mir, 766 F.2d at 1484-85.

While Congress is under no obligation to articulate its
reasons for enacting legislation, Congress has expressed serious
concern regarding the failure to appear at immigration
proceedings by aliens released on bond and parole.   These
concerns reached their zenith in 1995 and 1996, when Congress
was considering the bills that eventually became the Anti-
Terrorism and Effective Death Penalty Act and IIRIRA.   A 1995
report of the Senate Governmental Affairs Committee observed
that "[t]hrough 1992, nearly 11,000 criminal aliens convicted of
aggravated felonies (which are particularly serious crimes)
failed to appear for deportation hearings. . . ."  S. Rep. No.
104-48, 1995 WL 170285 (Apr. 7, 1995) (emphasis added).   The
failure to appear was not limited to only immigration
proceedings; rather, it also manifested itself the absconding of
aliens ordered deported:   "In New York, for example, in fiscal
year 1993, out of 1695 [orders to surrender for deportation]
sent to criminal and non-criminal aliens, 1486, or 87.7 percent
failed to surrender.   Also, in New York, there were $2.4 million
in bonds breached in fiscal year 1993." See also id. (emphasis
added).

12

The observations by Senator Abraham show that Congress was concerned with further crimes against the people of the United States:

> Needless to say, <u>the majority of criminal aliens released from custody do not return for their [deportation] hearings.</u>  Having been returned to the streets to continue their criminal predation on the American citizenry, many are rearrested soon after their release.  Thus, for example, a recent study by the GAO found that 77 percent of noncitizens convicted of felonies are rearrested at least one more time.  In Los Angeles County alone, more than half of incarcerated illegal aliens are rearrested within 1 year of their release.

141 Cong. Rec. S7803, 7823 (daily ed. June 7, 1995) (emphasis added); see also S. Rep. No. 48, 1995 WL at 170285 ("Too often, as one frustrated Service official told the Subcommittee staff, only the stupid and honest get deported").

The enormous failure by aliens released on bond or parole to appear at their immigration proceedings imposes a substantial cost on the people and government of the United States. Assuring that removal proceedings continue in a way so that aliens with little hope of remaining will be expeditiously removed from the United States is more than a legitimate and bona fide reason – it is a wholly appropriate aim of Congress.

> **2.    Even "as applied," the application of mandatory detention to Petitioners is constitutional**

13

The application of mandatory detention is not unconstitutional "as applied." Petitioners have been convicted of serious criminal offenses - drug trafficking. Based on his conviction, Reyna has been ordered removed from the United States. Ornelas' and Rodriguez' cases are still pending, but, in accordance with current Board and Fifth Circuit law, they too will be found removable and ineligible for relief from removal.

Thus, cases like that of Petitioners are the very reason why mandatory detention was enacted: to ensure that criminal aliens not escape the application of the immigration laws and subsequent removal thereunder. Accordingly, Petitioners' mandatory detention under INA §236(c)(1) is constitutional, and any facial or as-applied attacks on the statute must fail.

### E. Adverse Rulings in Other Circuit Courts of Appeal.

The Government is aware of contrary determinations on this issue. See Patel v. Zemski, 275 F.3d 299 (3rd Cir. 2001); Kim v. Ziglar, 276 F.3d 523 (9th Cir. 2002) petition for cert. filed Demore v. Kim (April 2002); and Phu Chan Hoang v. Greene, 282 F.3d 1247 (10th Cir. 2002). However, the Government maintains that immigration detention under INA §236(c)(1) is constitutional, both on its face and as applied to lawful

14

permanent residents like the Petitioners.  The Solicitor

General's Office currently is considering whether to seek

rehearing en banc or certiorari in the remaining cases.  In

addition, the Government continues to vigorously defend the

constitutionality of INA §236(c) before the Seventh Circuit

which has agreed with the Government's position, <u>Parra v.</u>

<u>Perryman</u>, 172 F.3d 954 (1999), and other circuits that have not

yet ruled on the issue, including the Fifth Circuit.  Thus,

while recognizing the contrary controlling precedent, the

Government continues to assert the constitutionality of INA

§236(c), in order to preserve its position pending a

determination by the Solicitor General on whether to seek

further review of the aforementioned adverse decisions.

INA §236(c) is a validly enacted federal statute, passed by

overwhelming majorities in both houses of Congress, and signed

by the President.  Controlling Supreme Court precedent confirms

that a reviewing court's inquiry into the constitutionality of

an immigration statute like INA §236(c) is limited to

determining whether the statute rationally relates to legitimate

legislative ends.[2]  <u>Carlson v. Landon</u>, 342 U.S. 524, 532-33

---

[2] The "special justification" standard of review applied in
<u>Zadvydas</u>, 121 S.Ct. at 2498-99, is distinguishable.  <u>Zadvydas</u>
involved the potentially indefinite detention of the alien,

(1952); see also Mathews v. Diaz, 426 U.S. 67, 82-83 (1976).
Insuring that removable criminal aliens are available during
their removal proceedings to facilitate a final administrative
decision and expeditious removal, and preventing them from
absconding or committing further crimes in the interim, are not
only legitimate, but substantial and compelling, governmental
goals. See, e.g., United States v. Salerno, 481 U.S. 739, 747-
51 (1987).

### CONCLUSION

For the foregoing reasons, the Court should dismiss the
Habeas Petition in regard to Ornelas and Rodriguez.
Additionally, this Court should find that INA §236(c) is
constitutional and deny the habeas corpus petition.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel:  (956) 389-7051
Georgia Bar No. 590315
April _12_, 2002          Federal Bar No. 23937

---

unlike this one where the detention is limited to the duration
of the alien's immigration proceedings.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Respondents' Motion to Dismiss and Response to Petitioners' Petition for Writ of Habeas Corpus and Class Action Complaint for Declaratory and Injunctive Relief was mailed via first class mail, postage prepaid to:

> Lisa Brodyaga, Esquire
> Refugio Del Rio Grande
> 17891 Landrum Park Rd.
> San Benito, TX 78586

on this 12th day of April, 2002.

LISA M. PUTNAM
Special Assistant United States Attorney