UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 2 2002

Michael N. Milby
Clerk of Court

EUGENIO REYNA MONTOYA, et al )
)
v. ) C.A. No. B-02-026
)
E.M. TROMINSKI, et al. )
_____ )

**PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO DISMISS**

Petitioners, through the undersigned, on their own behalf and on behalf of the class they seek to represent, file the instant opposition to "Respondents' Motion to Dismiss and Response to Petitioners' Petition for Writ of Habeas Corpus and Class Action Complaint For Declaratory and Injunctive Relief." [1]

## I. INTRODUCTION

INS' Motion addresses the following claims, and defenses: 1) that the case is moot, (INS:5); 2) that Petitioners' liberty interest is "limited" (INS:7-8); 3) that, **on its face**, 8 U.S.C. §1226(c) comports with Substantive Due Process. (INS:8-13); [2] 4) that even as applied to lawful permanent residents, mandatory detention is constitutional, (INS:13-14), and 5) Respondents also attempt to distinguish the unanimous, post-*Zadvydas* [3] decisions of the U.S. Courts of Appeals concluding that §1226(c) is unconstitutional as applied to lawful permanent residents. (INS:14-16)

---

[1]   Respondents' pleading is both a motion to dismiss, and a response to the petition and complaint. For simplicity, however, it will be cited as (INS:___), and referred to as "INS' Motion."

[2]   This argument is irrelevant, since Plaintiffs do not challenge the statute on its face, but only **as applied** to lawful permanent residents of the United States.

[3]   *Zadvydas v. Underdown*, 121 S.Ct. 2492 (2001), wherein a "reasonable time" limitation was read into Respondents' authority to detain former LPRs under final orders of deportation which could not be immediately effectuated.

However, Respondents have **not** contested the following portions of Plaintiffs' Petition and Complaint, (herein cited as (PET:__)):

1) the specific facts of the named Petitioners, (PET:2-6);
2) the class allegations, (PET:7);
3) Petitioners' assertion that their detention violates both international law and treaty obligations with Mexico, (PET:7), and
4) Petitioners' claim that "they have a fundamental right to united with their families within the United States," (PET:8).

Under Rule 8(d) F.R.Civ.P., the allegations in the petition and complaint which were not denied must be taken as admitted:

> Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading.

Most importantly, this includes the class allegations.[4] Further, the truth of these allegations is nearly self-evident. The other claims, while technically admitted, are more controversial. Consequently, they will be further addressed herein.

## II.  ISSUES ADDRESSED

**A. THE CASE IS NOT MOOT, SINCE, PURSUANT TO 8 C.F.R. §236.1(c)(8), RESPONDENTS HAVE THE DISCRETION TO REVOKE PETITIONERS' BONDS, AND THEY WOULD HAVE NO LEGAL RECOURSE.**

**B. AS APPLIED TO LPRs, 8 U.S.C. §1226(c)(1), WHICH MANDATES THE DETENTION OF CERTAIN IMMIGRANTS PENDING REMOVAL PROCEEDINGS, WITHOUT INDIVIDUALIZED BOND HEARINGS, VIOLATES BOTH SUBSTANTIVE AND PROCEDURAL DUE PROCESS.**

---

[4] Respondents also filed no opposition to Petitioners' Motion for Class Certification, filed on March 20, 2002. Therefore, not only are the class allegations admitted, but under Local Rule 7.4, the motion is deemed to be unopposed.

1. **BY VIRTUE OF THEIR STATUS AS LAWFUL PERMANENT RESIDENTS, PETITIONERS ARE ENTITLED TO PROCEDURAL DUE PROCESS IN DETERMINING WHETHER THEY ARE ENTITLED TO BOND DURING REMOVAL PROCEEDINGS**

2. **SIMILARLY, PETITIONERS HAVE BOTH A FUNDAMENTAL RIGHT TO REJOIN FAMILY IN THE U.S., AND A LIBERTY INTEREST IN BEING FREE FROM ARBITRARY DETENTION, SUCH THAT THEY ARE ENTITLED TO SUBSTANTIVE DUE PROCESS BEFORE THESE RIGHTS AND INTERESTS MAY BE ABRIDGED**

C. **PETITIONERS AND THE CLASS THEY SEEK TO REPRESENT ARE ENTITLED TO IMMEDIATE, PRELIMINARY RELIEF.**

### III. ARGUMENT

The existence of serious constitutional problems mandates that a Court seek a construction of the statute which would avoid them. *Webster v. Reproductive Health Services*, 492 U.S. 490, 562 (1989) (where fairly possible, statutes must be construed to avoid serious constitutional problems); *INS v. Cardoza-Fonseca*, 94 L.Ed2d 434, 459 (1987) (reaffirming "the long-standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien."). See also, *Zadvydas, v. Underdown, supra*.

Petitioners therefore urge the Court to seek a construction of §1226(c)(1) which avoids these problems, even if, as in *Zadvydas*, this requires that additional limitations be read into the statute. Petitioners urge herein that the Court conclude that Congress did not intend the statute to be applied to LPRs. Alternatively, it is urged that the Court find, as have all the Courts of Appeals which have reached the issue after *Zadvydas*, that, *as applied to permanent residents*, §1226(c)(1) offends Due Process. [5]

---

[5] *Hoang v. Comfort*, 282 F.3d 1247 (10th Cir. 2002); *Kim v. Ziglar*, 276 F.3d 523 (9th Cir. 2002), and *Patel v. Zemski*, 275 F.3d 299 (3rd Cir. 2001).

3

In *Hoang* and *Patel*, the Courts found that mandatory detention violated Substantive Due Process as applied to LPRs. In *Kim*, the Court found a Procedural Due Process violation. In each case, individualized bond hearings were ordered, to determine whether the LPRs presented flight risks, or were a danger to the community.

Respondents acknowledge that these Courts of Appeals held that §1226(c)(1) is unconstitutional as applied to LPRs. They respond by noting that the Solicitor General is considering how to respond to these decisions, (INS:15), [6] and by citing three, pre-*Zadvydas* Supreme Court decisions, none of which is on point, (INS:15-16).

**A. THE CASE IS NOT MOOT, SINCE, PURSUANT TO 8 C.F.R. §236.1(c)(8), RESPONDENTS HAVE THE DISCRETION TO REVOKE PETITIONERS' BONDS, AND UNDER 8 U.S.C. §1226(c), AS INTERPRETED BY RESPONDENTS, THEY WOULD HAVE NO LEGAL RECOURSE.**

INS' first argument, and the only one which could reasonably be viewed as supporting a motion to dismiss, is that the cases of two of the three named Petitioners are moot, because they were given hearings, and released on bond. (INS:5). Even if, as currently appears likely, all three are eventually released on bond, this would not render their claims moot. *A fortiori*, they would not be moot if the class were certified prior to that time.

---

[6] The sole Court to reach a contrary conclusion not only did so prior to *Zadvydas*, but in a situation where the person conceded that he was subject to deportation, and ineligible for any form of relief. *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999). *See*, (INS:15). By contrast, all the named Petitioners herein assert eligibility for relief, although their claims are based primarily on constitutional issues. Many of these claims are presently before this Court in *Salazar-Regino v. Trominski*, CA B-02-045. In the last such case to be before this Court, *Gonzalez-Noyola v. Trominski*, CA B-01-058, even though the petitioner had been granted relief, and ordered released on recognizance, by an Immigration Judge, he eventually gave up his fight to save his LPR status, simply because he could no longer tolerate his prolonged detention, without bond.

Under 8 C.F.R. §236.1(c)(8), Respondents retain broad discretion to revoke Petitioners' bonds, and return them to custody. Should this occur, in light of Respondents' continued defense of the constitutionality of 8 U.S.C. §1226(c), and the fact that they have not always released such LPRs, even when ordered to do so by an Immigration Judge, [7] Petitioners would have no legal recourse.

Hence the claims, even of those named Petitioners who have been released, are not moot. *See, U.S. v. Brown*, 250 F.3d 907,913 n.8 (5th Cir. 2001) (case not moot if challenged action is capable of repetition but evading review). *See also, Sierra Club v. Glickman*, 156 F.3d 606,620 (5th Cir. 1998) (the exception to the mootness doctrine that a controversy is capable of repetition but evading review "is designed to protect plaintiffs; it is not designed to protect defendants from the possibility of future lawsuits.").

**B. AS APPLIED TO LAWFUL PERMANENT RESIDENTS, 8 U.S.C. §1226(c)(1) VIOLATES BOTH SUBSTANTIVE AND PROCEDURAL DUE PROCESS.**

**1. AS LPRs, PETITIONERS ARE ENTITLED TO PROCEDURAL DUE PROCESS IN DETERMINING WHETHER THEY ARE ENTITLED TO BOND.**

Notably, although INS argues that §1226(c) does not violate Substantive Due Process, (INS:5), they make no corresponding claim that it does not violate Procedural Due Process. As concluded in *Kim, supra*, as applied to LPRs held indefinitely, and without bail, during removal proceedings, 8 U.S.C. §1226(c)(1) violates the *procedural* due process right to individualized determinations of whether they pose a risk of flight or a danger to community. In *Kim, supra*, the District Court ordered, and INS provided, a bond hearing. As a result, the LPR was released on bond. The Court

---

[7] The Court can take judicial notice of the case of *Gonzalez-Noyola v. Trominski, supra*, wherein Respondents never released the petitioner, and, in despair, he ultimately gave up the fight, and returned to Mexico under a final order of removal.

5

concluded that there was nonetheless a live controversy, since INS said that it would take Mr. Kim back into custody if the Order were reversed. *Id.* at 526. [8] The Court sustained the Order, *id.* at 530, on the basis that, as applied to LPRs, it violated Due Process:

> In this case, as in *Zadvydas*, it is clear that the statute authorizing detention is civil and regulatory, not criminal or punitive. The detention authorized by § 1226(c) is ostensibly designed to ensure that aliens are removed, and it is established law that removal proceedings are civil. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). Following *Zadvydas*, we thus must analyze § 1226(c) to determine whether the government has provided a sufficiently strong "special justification" to justify civil detention of a lawful permanent resident alien.
>
> The government advances five justifications for no-bail civil detention under § 1226(c): (1) preventing criminal aliens from absconding so that they can be expeditiously removed as required by law, (2) protecting public safety from the presence of potentially dangerous criminal aliens, (3) making the removal of criminal aliens a top priority of immigration enforcement, (4) correcting the failure of the prior laws which permitted release on bond, and (5) repairing damage to America's immigration system.

The Court examined these justifications, and found them inadequate under the majority opinion in *Zadvydas*. *Id.* at 535. However, the Court did not stop there. In addition, the Court concluded that the statute failed muster under the reasoning of Justices Kennedy and Rehnquist, who argued that the "proper constitutional test was whether the detention was arbitrary or capricious." *Id.* at 535-36.

---

[8] This is similar to the situation of Petitioner Ornelas. Although an Immigration Judge, (following the three Circuit Court decisions discussed above), held a bond hearing, and Mr. Ornelas has been released, as INS admits in its Motion, (INS:3-4), they are appealing that decision. This is facially inconsistent with INS claim that his case "should be dismissed as moot." (INS:5).

In *Patel*, the challenge was framed as an as applied violation of both Substantive and Procedural Due Process. The Court upheld the Substantive claim, and thus did not reach the procedural issues. *Id.* at 307 (footnote and internal citations omitted):[9]

> "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." ... Although due process rights can be denied to aliens seeking admission to the United States, ... aliens who have entered the country are entitled to the protection of the Due Process Clause whether their presence in this country is lawful or not.... Thus Patel, a lawful permanent resident, is entitled to due process protection against unlawful or arbitrary restraint, a legal proposition the government does not contest.

Thus, this Honorable Court may find a Due Process violation, based either on Substantive, or Procedural, Due Process.

**2. SIMILARLY, PETITIONERS HAVE A FUNDAMENTAL RIGHT BOTH TO REJOIN FAMILY IN THE U.S., AND IN BEING FREE FROM ARBITRARY DETENTION, WHICH ENTITLES THEM TO SUBSTANTIVE DUE PROCESS BEFORE THESE RIGHTS MAY BE ABRIDGED.**

---

[9] Notably, in *Patel*, *supra*, the Court examined, and rejected, the statistics cited by INS herein, (INS:12-13). As the Court concluded, *id.* at 311-312 (footnote omitted):

> Section 236(c) creates an irrebuttable presumption that all aliens subject to removal under this statute present a flight risk or a danger to the community. The government's own statistics cast doubt on that presumption. The government cites a study, the conclusions of which Patel and the amici vigorously contest, ... finding that prior to the enactment of this statute ninety percent of criminal aliens not detained during proceedings fled. Appellee's Br. at 12 (citing *Parra*, 172 F.3d at 956). In fact, a report from the Senate Committee on Governmental Affairs placed the percentage of aliens who fail to surrender at twenty percent. S.Rep. No. 104-48, at 23 (1995) ("over 20 percent of non-detained criminal aliens do not appear for their deportation proceedings").

In its defense of §1226(c), INS references Petitioners' liberty interest, (INS:7-8), which they characterize as "limited," (INS:7). However, INS ignores the other basis on which Petitioners base their claim, to wit, their fundamental rights. (PET:8) ("because Petitioners are LPRs, they have a fundamental right to unite with their families within the United States"). The "fundamental right" analysis is distinct from the issue of the scope of their "liberty interest". *See, Landon v. Plasencia*, 459 U.S. 21,34 (1982):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

In reaching this conclusion, the Supreme Court cited *Bridges v. Wixon*, 326 U.S. 326 U.S. 135,154 (1945), as well as *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972), both of which recognize family relationships as fundamental rights. The existence of these fundamental rights, which, it must be emphasized, are enjoyed only by those who have a *right* to reside in this country, (i.e., by lawful permanent residents), triggers a "compelling state interest" analysis in determining whether a given abridgement passes Substantive Due Process muster. *Hoang* at *5-*7, *Patel* at 307-308; *See also, Washington v. Glucksberg*, 521 U.S. 702,721 (1997):

> As we stated recently in [*City of Boerne v.*] *Flores*, the Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." 507 U.S., at 302, 113 S.Ct., at 1447.

However, regardless of whether the fundamental interest at issue is that of family relationships, or the liberty interest to be free from arbitrary detention, there is little dispute but that it exists. As held in *Hoang*, for example, *supra* at 1257:

8

>   As a result, we conclude that the petitioners have a fundamental liberty interest in freedom from detention pending deportation proceedings that may only be infringed upon in certain limited circumstances.

See also, Patel, supra, at 308, concluding "that the right implicated is a fundamental liberty right."

Having found that fundamental rights were at stake, both the *Hoang* and *Patel* Courts applied the pertinent compelling interest analysis, and concluded that the statute at issue does not meet this test. Respondents have made no arguments herein which were not addressed by those Courts. Consequently, the conclusion should be the same as that reached therein.

### C.  PETITIONERS AND THE CLASS THEY SEEK TO REPRESENT ARE ENTITLED TO IMMEDIATE, PRELIMINARY RELIEF.

Consequently, Petitioners, in their own name, and on behalf of the class they seek to represent, seek immediate, preliminary relief. To be eligible for such relief, they must make certain showings. As reiterated in *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047 (5th Cir. 1997), preliminary relief should only be granted where the movant demonstrates substantial likelihood of success on the merits, substantial threat of irreparable harm if such relief is not granted, that the threatened injury outweighs any harm that may result to the opposing party, and that such an action will not undermine the public interest. *See also*, Fed. Rules of Civil Procedure, Rule 65. These criteria are met herein.

#### 1.  LIKELIHOOD OF SUCCESS ON THE MERITS

As seen from the decisions in *Hoang, Kim,* and *Patel,* Petitioners have an excellent chance of success on the merits. Further, the Fifth Circuit reminded INS that "the executive branch, of course, has an independent duty to uphold the Constitution, irrespective of

whether its actions are subject to judicial review." *Loa-Herrera v. Trominski*, 231 F.3d 984,991 (5th Cir. 2000).

### 2. THERE IS A SUBSTANTIAL RISK OF IRREPARABLE HARM IF PRELIMINARY RELIEF IS NOT GRANTED

The detention, without bond, and without access to a hearing before an impartial adjudicator, of Petitioners and the class they seek to represent is causing irreparable harm, both to them, and to their U.S. citizen families, who depend on them for financial and moral support. The harm caused thereby increases with each passing day, and is irreparable, in that there is no means of retroactively restoring the time and income lost.

### 3. THE THREATENED INJURY FAR OUTWEIGHS ANY INJURY TO RESPONDENTS OF GRANTING THE REQUESTED RELIEF

Other than the trivial inconvenience of conducting a few additional hearings, no harm will accrue to Respondents or the public if this Court grants LPRs the right to a bond hearing. The issue of whether they present a flight risk, or a threat to the community, will be addressed at said hearings. And unless Respondents claim that the procedures in place for making such determinations are ineffective, they cannot claim that they will be "harmed" by their utilization.

### 4. THE REQUESTED RELIEF IS IN THE PUBLIC INTEREST

To the contrary, such relief will benefit not only the Petitioners, and their families, but the public at large. It will further the impression, as well as the reality, of justice. It will also forestall the necessity that their families seek public assistance, and ensure that Petitioners are able to receive full and fair opportunity to press any arguments that they are not removable as charged, and to pursue any applications for relief from removal.

Petitioners therefore request, on their own behalf and on behalf of the class they seek to represent, that both a preliminary and

permanent injunctions issue, restraining and enjoining Respondents from detaining LPRs under 8 U.S.C. §1226(c)(1), without providing a bond hearing before an Immigration Judge, and without abiding by the decision reached in such hearings.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178
Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing, and proposed Order, were mailed, first-class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen, Texas 78551, this 22nd day of April, 2002.

11