United States District Court
Southern District of Texas
FILED

MAY 0 3 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EUGENIO REYNA MONTOYA, et al )
)
v. ) C.A. No. B-02-026
)
E.M. TROMINSKI, et al. )
_____ )

**PETITIONERS' ADVISAL OF NEW DECISION HOLDING 8 U.S.C. §1226(c)
UNCONSTITUTIONAL AS APPLIED TO A LAWFUL PERMANENT RESIDENT**

Petitioners, through the undersigned, on their own behalf and on behalf of the class they seek to represent, hereby advise the Court of yet another decision, holding that 8 U.S.C. §1226(c) violates Substantive Due Process, and is therefore unconstitutional as applied to a lawful permanent resident. *Shadi El-Banna v. Hansen, et al*, No. 1:02 CV 501 (N.D.Ohio April 26, 2002). A copy is attached for the Court's reference.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney        Thelma O. Garcia, Attorney
17891 Landrum Park Road           301 E. Madison
San Benito, TX 78586              Harlingen, TX 78550
(956) 421-3226                    (956) 425-3701
(956) 421-3423 (fax)              (956) 428-3731 (fax)
Fed. ID. 1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing, and Exhibit, were mailed, first-class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen, Texas 78551, this 2nd day of May, 2002.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHADI EL-BANNA, ) | Case No.: 1:02 CV 501 |
| ) | |
| Petitioner ) | JUDGE SOLOMON OLIVER, JR. |
| ) | |
| v. ) | |
| ) | |
| MARK HANSEN, District Director, ) | |
| Immigration and Naturalization ) | |
| Service, *et al.*, ) | |
| ) | |
| Respondents ) | MEMORANDUM AND ORDER |

Petitioner Shadi El-Banna ("El-Banna"), a native and citizen of the Hashemite Kingdom of Jordan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on March 14, 2002, challenging the constitutionality of his mandatory detention without the opportunity for bond during the pendency of his deportation proceedings. The Petition is directed to Respondents Mark Hansen, District Director of the Cleveland office of the Immigration and Naturalization Service ("INS"), John Ashcroft, United States Attorney General, and James W. Ziglar, Commissioner of the INS, and claims that the Immigration and Nationality Act ("INA") § 236(c), the statute pursuant to which the INS is currently detaining El-Banna, violates El-Banna's substantive and procedural due process rights under the Fifth Amendment of the United

States Constitution.[1] Respondents moved to dismiss the Petition for failure to state a claim for relief. For the reasons discussed below, the court finds that El-Banna's as-applied substantive due process challenge is well-taken. Therefore, Respondents' Motion to Dismiss is denied and El-Banna's Petition for Writ of Habeas Corpus is granted.

## I. FACTS

El-Banna entered the United States on June 20, 1994, as a non-immigrant visitor. On June 3, 1999, El-Banna's adjustment of status application was granted, and his status was adjusted to lawful permanent resident.

On March 6, 2002, the INS arrested El-Banna and issued him a Notice to Appear. The Notice charged that El-Banna was removable because he had been convicted on August 14, 2000, in the Cleveland Municipal Court on two counts of drug abuse for possession of marijuana.[2] Upon reviewing his file, the INS determined that El-Banna was subject to mandatory detention during the pendency of his removal proceedings pursuant to INA § 236(c). Thereafter, El-Banna was sent to the INS detention facility in Oakdale, Louisiana. According to counsel for El-Banna, the immigration court in Oakdale conducted a telephonic hearing on April 11, 2002, at which time the court determined that El-Banna is

---

[1] INA § 236(c) is codified at 8 U.S.C. § 1226(c) (2001). However, for clarity, the court will refer to the statutory section number, i.e. § 236(c), as opposed to the codified section, 8 U.S.C. § 1226(c).

[2] The government contends that El-Banna, who is approximately twenty-four years old, was also indicted on August 3, 2000, on 12 counts of corruption of a minor in violation of Ohio Rev. Code § 2907.04 for engaging in sexual conduct with a 14-year-old girl. On June 14, 2001, El-Banna pleaded guilty to the lesser included offense of importuning in violation of Ohio Rev. Code § 2907.07. He was given a suspended sentence of six months in jail but was placed on probation for two years. These charges were not included in the Notice to Appear issued by the INS.

2

subject to mandatory detention. El-Banna's initial immigration hearing is set for April 29, 2002. El-Banna maintains that at that hearing, he will request withholding of removal. El-Banna also asserts that he plans to file a motion for post-conviction relief in state court alleging that his pleas for the drug abuse convictions were not knowing and voluntary.

On March 14, 2002, El-Banna filed his petition for writ of habeas corpus in this court, seeking a declaration that § 236(c) is unconstitutional both on its face and as applied to him and an order requiring the INS to conduct a bond hearing.

## II. LAW AND ANALYSIS

### A. **Exhaustion of Remedies**

As a preliminary issue, the government argues that El-Banna's petition should be dismissed for failure to exhaust administrative remedies. The government contends that El-Banna may request review of the INS's initial decision that he is subject to § 236(c). According to the government, if the immigration court or the Board of Immigration Appeals were to determine that § 236(c) does not apply to El-Banna, litigation of the constitutional issue here could be avoided and El-Banna could obtain the relief he seeks -- a bond hearing and possible release from INS custody. Therefore, according to the government, El-Banna should utilize the administrative procedures available to him before being allowed to file his habeas action.

Under the INA, exhaustion of administrative remedies is only required for appeals of final orders of removal. *See* 8 U.S.C. § 1252(d)(1). Since El-Banna is challenging the constitutionality of § 236(c), and not a final order of removal, exhaustion is not mandatory and the decision whether El-Banna should be required to exhaust his administrative remedies before filing his petition is left to this court's discretion. *McCarthy v. Madigan*, 503 U.S. 140, 144. In making this decision, there are "at least three broad sets

3

of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion": (1) where such requirement would subject an individual to an unreasonable or indefinite time frame for administrative action, (2) where the administrative agency lacks the competence to resolve the particular issue presented, and (3) the exhaustion of administrative remedies would be futile because the administrative body is shown to be biased or has pre-determined the issue before it. *Id.* at 146-48. Each of these circumstances is relevant here.

First, the immigration court has already determined that § 236(c) is applicable to El-Banna; thus, if this court ordered El-Banna to exhaust his administrative remedies, he would be detained while he was doing so. "A petitioner's detention during the period required for the exhaustion of remedies may infringe upon his or her rights, especially where the issue sought to be raised, the constitutionality of § 236(c), is one which does not implicate the discretion or the expertise of the agency involved." *Hoang v. Comfort*, 282 F.3d 1247, 1254 (10th Cir. 2002). Second, the government concedes that the immigration court does not have the power to determine the constitutionality of § 236(c). (*See* Respondents' Mot. to Dismiss at 13). Third, exhaustion of administrative remedies would be futile because the BIA has previously ruled that it is barred by § 236(c) from granting bond. *Hoang*, 282 F.3d at 1254 (citing *Galvez v. Lewis*, 56 F.Supp.2d 637, 644 (E.D. Va. 1999).

Accordingly, the court finds that El-Banna is not required to exhaust his administrative remedies before filing his habeas petition, and will proceed to the question of whether § 236(c) violates El-Banna's due process rights.

**B.   INA § 236(c)**

Under INA § 236(c), the Attorney General must take into custody any alien who:

4

>is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii) [multiple criminal convictions for crimes of moral turpitude], (A)(iii) [aggravated felonies], (B) [controlled substances], (C) [certain firearm offenses], or (D) [miscellaneous crimes] of this title . . . .

INA § 236(c)(1)(B), 8 U.S.C. § 1226(c)(1)(B). An alien who falls under § 236(c) may only be released if the alien's release is necessary to provide protection to, *inter alia*, a witness, a potential witness, or a person cooperating with a criminal investigation. INA § 236(c)(2), 8 U.S.C. § 1226(c)(2). Other than these limited instances, the Attorney General does not retain discretion to consider whether criminal aliens may be released during the pendency of their removal proceedings.

Many aliens being held pursuant to § 236(c) have challenged the constitutionality of the statute, claiming that their detention without any opportunity for an individualized determination of their risk of flight or danger to the community violates both their substantive and procedural due process rights to be free from restraint of liberty. The courts evaluating these challenges have reached conflicting results. Four circuit courts have addressed the issue. The Tenth Circuit in *Hoang v. Comfort*, 282 F.3d 1247 (10th Cir. 2002), the Ninth Circuit in *Kim v. Ziglar*, 276 F.3d 523 (9th Cir. 2002), and the Third Circuit in *Patel v. Zemski*, 75 F.3d 299 (3rd Cir. 2001), have all found that § 236(c), as applied to lawful permanent resident aliens, violates substantive due process. The Seventh Circuit in *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999), found that § 236(c) does not violate either substantive or procedural due process.

C.   **Due Process**

The Fifth Amendment's Due Process Clause guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause

5

encompasses both a substantive and procedural right to due process. Substantive due process prohibits the government from engaging in conduct that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172 (1952), or interferes with rights "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937). Procedural due process prohibits the government from depriving individuals of life, liberty, or property in an unfair manner. *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1972).

The court will first address whether § 236(c) violates El-Banna's substantive due process rights. The court need only address the question of procedural due process if it finds that his substantive due process rights have been violated. *Patel*, 275 F.3d at 302.

1. **Nature of Petitioner's Interest**

El-Banna is a lawful permanent resident of the United States until such time as he is finally ordered deported. *See* 8 C.F.R. § 1.1(p) (stating that lawful permanent resident status terminates upon entry of a final administrative order of exclusion or deportation). *See also* 8 U.S.C. § 1101(a)(20). El-Banna's removal order will not become final until the BIA affirms the order. 8 U.S.C. § 1101(47)(B). An alien who is a lawful permanent resident of and is physically present in the United States is entitled to the protection of the Due Process Clause. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly."); *Zadvydas v. Davis,* 533 U.S. 678 (2001) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). El-Banna is therefore a person within the protection

of the Fifth Amendment and may not be deprived of life, liberty or property without the due process of law.

Since El-Banna is entitled to due process protection, the court must identify the nature of El-Banna's asserted right. *See Reno v. Flores*, 507 U.S. 292, 302 (1993). If the court finds that El-Banna's asserted right is fundamental, then § 236(c), which allegedly infringes on that right, must be narrowly tailored to achieve a compelling governmental interest. *See id.* at 301-02. If § 236(c) does not infringe on one of El-Banna's fundamental rights, the statute need only be reasonably related to a legitimate governmental purpose. *See id.* at 305.

El-Banna argues that INA § 236(c), which allows the government to detain him without an individualized determination as to his risk of flight or danger to the community, deprives him of his fundamental right to liberty. He claims that the statute violates substantive due process absent an opportunity for an individualized bond hearing to determine whether he is a flight risk or a danger to the public. (Petitioner's Emergency Petition at 6). According to El-Banna, "government detention violates th[e] [Due Process] Clause unless the detention is ordered in special and narrow non-punitive circumstances . . . where a special justification . . . outweighs [his] constitutionally protected interest in avoiding physical restraint." (*Id.* at 9) (citing *Zadvydas*, 533 U.S. 678)).

The government, relying on the Seventh Circuit's decision in *Parra*, argues that El-Banna's interest is not fundamental because he has forfeited any legal right to remain in the United States, thereby diminishing any liberty interest he may have had. The government urges this court to hold, as did the *Parra* court, that El-Banna's interest should therefore be characterized as "not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country." *Parra*, 172 F.3d at 958.

7

As the Tenth Circuit recognized in *Hoang*, 282 F.3d at 1255-56, the validity of the *Parra* court's reasoning is questionable in light of the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See Hoang*, 282 F.3d at 1255-56 ("We do not agree with the Seventh Circuit's determination that an alien who is subject to § 236(c) has somehow forfeited his or her right to liberty during deportation proceedings. A similar argument was recently rejected in *Zadvydas*. . . ."). The *Zadvydas* Court held that even aliens subject to a final order of deportation retain a liberty interest strong enough to raise a due process challenge concerning their indefinite and possibly permanent detention resulting from the inability to carry out the deportation order. *Zadvydas*, 533 U.S. at 696. In reaching this determination, the Court expressly rejected the government's contention that "whatever liberty interest the aliens possess, it is 'greatly diminished' by their lack of a legal right to 'liv[e] at large in this country.'" *Id. See also Hoang*, 228 F.3d at 1256 ("In the wake of the Court's ruling in *Zadvydas*, the vitality of the Seventh Circuit's holding in *Parra* is greatly diminished, as is the government's argument which relies upon *Parra*."); *Kim*, 276 F.3d at 537 ("In analyzing an alien's liberty interest in release during removal proceedings, *Parra* stated, 'Persons subject to § [236(c)] have forfeited any *legal* entitlement to remain in the United States[.] . . . The private interest here is liberty in the United States by someone no longer entitled to remain in this country. . . .' This is simply wrong.") (internal citations omitted).

*Parra* is further undermined by the Court's holding in *Zadvydas* regarding the effect of Congress' plenary power over the treatment of aliens on the constitutionality of the statute at issue in that case. Congress unquestionably has plenary power to create substantive immigration law to which the courts generally must defer. *See, e.g., Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("Our cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the

8

Government's political departments largely immune from judicial control.'") (quoting *Shaughnessy v. U.S. Ex Rel. Mezei*, 345 U.S. 206, 210 (1953)). *Parra* relied heavily on the fact that Congress has such "sweeping powers" over aliens in finding that § 236(c) passed constitutional muster. *See Parra*, 172 F.3d at 958. However, while the Supreme Court in *Zadvydas* recognized Congress' broad authority over aliens, it made clear that Congress' "power is subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. Specifically, the Court held that although deference should be given to Congress' immigration policies, Congress' authority over the means of implementing its policies is limited by the Constitution and need not be accorded deference. *Id.* (citing *Ins v. Chadha*, 462 U.S. 919, 940-41 (1983) ("The plenary authority of Congress over aliens . . . is not open to question, but what is challenged here is whether Congress has chosen a constitutionally permissible means of implementing that power.").[3]

On review, the court concludes that the INS's detention of El-Banna, a lawful permanent resident, without the opportunity for bond implicates El-Banna's fundamental liberty interest. This conclusion is in

---

[3]   This case is also distinguishable from *Parra* in that El-Banna plans to contest his deportability. In *Parra*, Parra had been convicted of a violent sexual offense and conceded the unavailability of relief from removal. As discussed above, El-Banna has challenged his deportability on the basis that he is not an "aggravated felon" within the meaning of the immigration laws. *Parra* is arguably inapplicable to aliens such as El-Banna who do not concede their deportability. *See Parra*, 172 F.3d at 957 (stating that "it is easy to imagine cases - for example, claims by persons detained under [§ 236(c)] who say that they are citizens rather than aliens, *who contend that they have not been convicted of one of the felonies that authorizes removal*, or who are detained indefinitely because the nations of which they are citizens will not take them back - in which resort to the Great Writ may be appropriate," but finding that Parra presented none of those possibilities since he conceded his removability because of his criminal conviction as well as the fact that his home country would accept his return) (emphasis added). *See also Patel*, 275 F.3d at 314 (distinguishing *Parra* on the ground that Patel contested his deportability).

9

accord with the Third Circuit's, Ninth's Circuit's and Tenth Circuit's decisions in *Patel*, *Kim*, and *Hoang*, respectively, all of which found that the nature of the right asserted by lawful permanent resident aliens in El-Banna's situation is fundamental. *See Patel*, 275 F.3d at 310 ("[W]e . . . conclude[] that § 236(c) implicates Patel's fundamental right to be free from physical restraint. . . ."); *Kim*, 276 F.3d at 535; *Hoang*, 282 F.3d at 1257 ("[W]e conclude that the petitioners have a fundamental liberty interest in freedom from detention pending deportation proceedings that may only be infringed upon in certain limited circumstances."). In so holding, the court rejects the government's contention that these courts erred in relying on *Zadvydas* in determining that § 236(c) implicates a fundamental liberty interest.

In *Zadvydas*, the Court noted that even for aliens, "[f]reedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." 533 U.S. at 690. The *Zadvydas* Court ultimately held that INA § 241(a)(6), which permitted the detention of aliens who had received a final order of deportation but remained in INS custody indefinitely because the government was unable to effect their removal to another country, would raise "a serious constitutional problem." *Id*. The Court construed the statute to limit post-removal-order detention to a period reasonably necessary to bring about the alien's removal, generally no more than six months. *Id*. at 689, 701. In reaching this conclusion, the Court recognized that immigration detention implicates a fundamental liberty interest and explained that "government detention violates th[e] [Due Process] Clause unless the detention is ordered in *criminal* proceedings with adequate procedural protections, or, in certain special and narrow non-punitive circumstances, where a special justification . .

. outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690, 692 (emphasis in original) (internal quotations and citations omitted).[4]

The government maintains that *Zadvydas* is inapposite to the instant situation because *Zadvydas* dealt with a post-order detention statute that could lead to "indefinite" and "potentially permanent" detention whereas aliens detained under § 236(c) are held for a finite period of time leading to the issuance of a final removal order. (*See* Respondents' Mem. in Supp. of Mot. to Dismiss at 19-21). The government further argues that the length of detention during proceedings is affected by factors within the parties' control (as opposed to uncontrollable factors such as the recalcitrance of another nation's refusal to agree to the prompt return of its nationals) such as the scheduling of removal hearings, or the alien's choice to challenge his removal or seek discretionary relief or protection from removal. (*Id.* at 20).

The court does not find *Zadvydas* to be properly distinguishable from this case based on the factors asserted by the government. First, detention pending the issuance of a final order is often lengthy. *See, e.g., Patel,* 275 F.3d at 309 (noting that Patel had been detained for eleven months, "six months longer than his prison sentence for the underlying offense, and five months longer than the six-month period the Supreme Court held presumptively reasonable for post-order detainees"); *Ly v. Hanson,* No.

---

[4] The Court cited to *United States v. Salerno,* 481 U.S. 739 (1987), *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992), and *Kansas v. Hendricks,* 521 U.S. 346, 356 (1997), in formulating this test. *See Salerno,* 481 U.S. at 747, 750-52 (in upholding pretrial detention, stressing "stringent time limitations," the fact that detention was reserved for the "most serious of crimes," the requirement of proof of dangerousness by clear and convincing evidence, and the presence of judicial safeguards);*Foucha,* 504 U.S. at 81-83 (striking down insanity-related detention system that placed burden on detainee to prove nondangerousness); and *Hendricks,* 521 U.S. at 368 (upholding scheme that imposed detention upon "a small segment of particularly dangerous individuals" and provided "strict procedural safeguards").

1:99CV1871 at 2 (N.D. Ohio Sept. 21, 2000) (Report and Recommendation) (finding that petitioner had been held pursuant to § 236(c) for more than seventeen months without a bond hearing or final removal order being issued). "Thus, while the *Zadvydas* Court did not address the constitutionality of pre-removal-order detention, there is no reason why the distinction between the statutes would make the Court's reasoning inapplicable to this case." *Patel*, 275 F.3d at 309.

Second, the court is unpersuaded by the government's argument that *Zadvydas* is inapplicable because the length of detention during proceedings is determined by factors within the parties' control. With regard to the scheduling of removal orders, as just noted, detention pending the issuance of a final order is often lengthy and can approach or even exceed the year-mark. Thus, the fact that the scheduling of removal orders is within the parties' control (and more accurately, largely within the government's control) is a meaningless distinction between this case and *Zadvydas*. The government's argument that this case is distinguishable from *Zadvydas* because the length of detention depends on the alien's choice to challenge his removal or seek discretionary relief or protection from removal is likewise without merit. In effect, the government argues that because the alien has the choice to give up the right to challenge his deportation and therefore shorten the length of time he will be held pending deportation, an alien's detention pursuant to § 236(c) does not offend due process. This argument is senseless in that it makes the constitutionality of § 236(c) turn on whether or not an alien decides to exercise the right to challenge his deportation.    Having found that § 236(c) implicates El-Banna's fundamental right to be free from physical restraint, the court will now address whether the statute survives heightened due process scrutiny.

    **2.**    **Heightened Due Process Standard**

12

As explained above, where the right implicated in a substantive due process challenge is fundamental, the government may not infringe upon that right unless the infringement is narrowly tailored to serve a compelling state interest. *See Flores*, 507 U.S. at 302. According to the Court in *Zadvydas*, government detention violates substantive due process except in certain non-punitive circumstances where a special justification outweighs the individual's constitutionally-protected interest in avoiding physical restraint. *See Zadvydas*, 533 U.S. at 690.

Thus, in determining whether § 236(c) passes constitutional muster, the court must first address whether § 236(c) is non-punitive. In *Zadvydas*, the Court noted that the proceedings at issue were civil, not criminal, and assumed that they were non-punitive in purpose and effect. *See id.* As in *Zadvydas*, § 236(c) is civil and regulatory, not criminal and punitive. The statute was enacted not as a punishment measure, but rather to ensure the removal of aliens by preventing them from fleeing and to protect the community from further criminal acts by aliens. *See Hoang*, 282 F.3d at 1259 (discussing legislative history of § 236(c)). Moreover, "[t]he power to deport necessarily encompasses the power to detain. Thus, the detention mandated in § 236(c) is regulatory and not punitive." *Patel*, 275 F.3d at 310-11 (citing *Carlson v. Landon*, 342 U.S. 524, 537-38 ("Deportation is not a criminal proceeding and has never been held to be punishment . . . . Detention is necessarily a part of this deportation procedure.")). *See also Patel*, 275 F.3d at 310 (concluding § 236(c) is non-punitive); *Kim*, 276 F.3d at 530 (same); *Hoang*, 282 F.3d at 1258-59 (same).

Next, the court turns to the second part of the *Zadvydas* analysis -- whether the purposes the government sets forth for § 236(c) constitute special justifications which outweigh El-Banna's constitutionally-protected interest in avoiding physical restraint. *Zadvydas*, 533 U.S. at 690. The

13

government contends that the purpose of the mandatory detention provision contained in § 236(c) is to prevent aliens from absconding during removal proceedings and to protect the public from potentially dangerous criminal aliens. (*See* Respondents' Mem. in Supp. of Mot. to Dismiss at 15). The court finds that neither of these purposes constitutes a "special justification" within the meaning of *Zadvydas*.

a.  <u>Risk of Flight</u>

The government argues that aliens such as El-Banna are the "most likely aliens [to] ... abscond[] during removal proceedings" and that their mandatory detention pursuant to § 236(c) is necessary to prevent them from doing so. (*See* Respondents' Mem. in Supp. of Mot. to Dismiss at 15). According to the government, El-Banna is likely to abscond because he failed to appear in court during his criminal proceedings and had to be arrested before he appeared. (*Id.*).

Although the government may have a strong interest in ensuring that aliens attend their deportation proceedings, § 236(c), which creates an irrebuttable presumption that all aliens to which mandatory detention applies are flight risks, is not narrowly tailored to achieve that interest. The Supreme Court has consistently rejected the notion that such a blanket assumption may be used as a justification for detention. The Third Circuit in *Patel* analyzed Supreme Court jurisprudence in this area, concluding that § 236(c) violates substantive due process because it does not provide for the type of individualized hearing that the Supreme Court has determined essential to affirming the constitutionality of various detention statutes:

> In *Flores*, where the Supreme Court applied the rational basis test, the Court found that test was satisfied because the "detained juvenile aliens [were given] the right to a hearing before an immigration judge" regarding their custody. 507 U.S. at 309, 113 S.Ct. 1439. In *Salerno*, where the Court upheld pretrial detention, such detention could be ordered only after the government had proved "by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or

> the community." 481 U.S. at 751, 107 S.Ct. 2095. Even in *Carlson*, where the Court upheld the detention of aliens deportable based upon their membership in the Communist Party, the detention was the result of a discretionary decision after an individualized determination that the individual posed a danger to the community. 342 U.S. at 538, 72 S.Ct. 525 (finding that "purpose to injure could not be imputed generally to all aliens subject to deportation" and thus required the exercise of discretion). In contrast to these statutes, § 236(c) has no provision for the kind of individualized hearing that was a predicate for detention in these cases.

275 F.3d at 311. *See also supra* note 3. Thus, even if El-Banna did fail to appear at his criminal proceedings, his mandatory detention based on the presumption that he will also fail to appear at his deportation proceedings without an individualized determination as to his flight risk runs contrary to Supreme Court precedent.

Moreover, while it may be true that the more likely an alien is to be deported, the less likely it is that the alien will attend his or her deportation proceedings, the inequity such an assumption creates is clear in a case like the instant one. Here, El-Banna plans to both contest his removability and his underlying convictions. If successful, the likelihood that El-Banna will be removed would obviously be lessened. El-Banna therefore has a significant incentive to attend his deportation proceedings. *See Hoang*, 282 F.3d at 1260. *See also Kim*, 276 F.3d at 531 (finding that significant avenues of relief remain available to aliens detained pursuant to § 236(c) - such as the Convention Against Torture, discretionary relief pursuant to § 212(c) for aliens whose convictions for aggravated felonies were obtained through plea agreements, and challenging the finding that the alien is an aggravated felon - therefore undermining the government's contention that an alien in removal proceedings has little hope of avoiding removal and correspondingly little incentive to appear for his removal hearing).

Finally, INA § 241(a)(6), which governs aliens subject to a final order of removal, allows for the possibility of bail for criminal aliens once 90 days have passed since the removal order was issued. *See* INA § 241(a)(6), 8 U.S.C. § 1231(a)(6) ("An alien ordered removed . . . may be detained beyond the [90 day] removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."). Without doubt, an alien who has already been ordered removed has greater incentive to flee than does an alien who is still in removal proceedings. Thus, "it makes little sense to deny bail to those who are in removal proceedings but have not yet been ordered removed" but allow aliens subject to a final order of removal to be released on bail. *Hoang*, 276 F.3d at 535.

Thus, the court finds that the fact that some criminal aliens may pose a risk of flight is insufficient to justify the mandatory detention of all lawful permanent resident aliens who meet the criteria under § 236(c) without providing the opportunity for an individualized determination that the alien is indeed a flight risk.

    b. <u>Danger to the Community</u>

The second asserted reason for mandatory detention, danger to the community, also fails to provide a special justification for detention that outweighs El-Banna's constitutionally-protected interest in avoiding physical restraint. As it does with the risk of flight that an alien subject to § 236(c) poses, § 236(c) applies the irrebuttable presumption that all those to whom it applies are dangerous. As noted above, Supreme Court jurisprudence establishes that civil detention will be upheld only when the opportunity for an individualized hearing is available, which is not the case under § 236(c). Moreover, when the basis for detaining an individual is the individual's dangerousness, it is the government's burden

to prove that the individual poses "an unusual and well-defined danger to the public". *See Kim*, 276 F.3d at 533. *See also supra* note 3.

In addition, § 236(c)'s irrebuttable presumption that all aliens to which it is applicable are dangerous "is not justified by the nature of offenses which § 236(c) encompasses." *Hoang*, 282 F.3d at 1260. As the *Hoang* court recognized:

> [o]ffenses to which the mandatory detention provision in § 236(c) applies include not only dangerous offenses such as murders, rapes, crimes of terrorist activity, violations of the controlled substances and firearms laws, and crimes committed by repeat offenders, but also less dangerous offenses such as crimes of moral turpitude with a sentence of one year in prison, theft offenses with a term of imprisonment of one year or more, fraud, tax evasion, assisting document fraud in some cases, and perjury. *See* 8 U.S.C. § 1226(c); 8 U.S.C. § 1101(a)(43).

*Id. See also Kim*, 276 F.3d at 534 ("Given the range of crimes qualifying as aggravated felonies, the government simply cannot show that § [236(c)] covers only aliens who pose an especially serious danger to the public."). Because § 236(c) covers such a vast array of offenses, an individualized determination that an alien is a danger to the public must be made before an alien's detention is warranted.

Accordingly, the government has failed to prove that the fact that some aliens may be dangerous is a "special justification" for detaining all lawful permanent resident aliens subject to § 236(c) without the opportunity for bond.

### 3. Avoiding Constitutional Issues

It is settled law that where possible, a court should interpret a statute in a manner that avoids deciding substantial constitutional questions. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 299-300 (2001). Neither El-Banna nor the government has argued that it is possible to interpret § 236(c) in a way that

17

would allow the court to avoid a constitutional issue in this context. Furthermore, given that § 236(c) provides for mandatory detention without the possibility of bail, the court does not find any way to avoid reaching the constitutional issues raised by El-Banna.

### III. CONCLUSION

The court finds that § 236(c), which deprives aliens of their fundamental right to freedom, is not narrowly tailored to meet the goals articulated by the government -- preventing aliens from absconding and protecting the community. These goals only justify detention of those individuals who present such risks. However, "due process requires an adequate and proportionate justification for detention--a justification that cannot be established without an individualized inquiry into the reasons for detention." *Patel*, 275 F.3d at 311.

For the foregoing reasons, the court holds that as a lawful permanent resident, El-Banna is entitled to a bail hearing with reasonable promptness to determine whether he is a flight risk or a danger to the community.[5] In reaching this conclusion, the court recognizes that the immigration court has full authority to decide whether to grant bail, and this Order in no way impinges on that authority.

As a practical matter, requiring the government to afford a hearing to aliens in El-Banna's position to evaluate their risk of flight and danger to the community will place minimal burdens on the government. The immigration courts are well-equipped to make bail determinations as they already do so in other contexts. Indeed, in El-Banna's case, the immigration court can reach such a determination at his April

---

[5] Because the court finds that El-Banna's as applied substantive due process challenge to § 236(c) is well-taken, it is unnecessary for the court to reach either his facial attack on § 236(c) or his claim that § 236(c) deprives him of procedural due process.

18

29, 2002 hearing. In any event, regardless of the burden a bail hearing imposes on the government, such a hearing is necessary in order to protect El-Banna's fundamental liberty interests and due process rights.

The government shall afford El-Banna a bond hearing before an immigration judge within ten days of the date of this Order. The immigration judge shall state clearly, on the record, the basis of an individualized determination whether any condition or combination of conditions of release will reasonably ensure that El-Banna will not flee and that he will not endanger the public. Inasmuch as the court has addressed all of the issues raised by El-Banna in his Petition for Writ of Habeas Corpus (ECF No. 1), El-Banna's Petition is hereby granted, and Respondent's Motion to Dismiss (ECF No. 9) is denied.

IT IS SO ORDERED.

/S/SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

April 26, 2002

19