United States District Court
Southern District of Texas
FILED

MAY 2 8 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EUGENIO REYNA-MONTOYA, ET AL.,      )
                                    )
        Petitioners,                )
                                    )
        v.                          )    CIVIL ACTION NO. B-02-026
                                    )
E.M. TROMINSKI,                     )
INS DISTRICT DIRECTOR               )
                                    )
                                    )
        Respondent.                 )
_____)

**OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Respondent Immigration and Naturalization Service ("INS") respectfully submits the following objections to the Report and Recommendation filed by Magistrate Judge Felix Recio on Monday, May 13, 2002. The Respondent contends that Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c)(hereinafter "Section 236(c)"), is constitutional as it effectuates the well-evident intent of Congress to streamline the process of removing criminal aliens by ensuring their presence throughout the pendency of immigration proceedings. Respondent also objects to the Magistrate Judge's recommendation that a class be certified and contends that in the context of mandatory, pre-order detention, the certification of any class to litigate multiple writs of habeas corpus offends the intent of Congress and hampers

1

the ability of the Executive Branch to carry out the legislative
will.

### THE MAGISTRATE JUDGE'S DECISION

The Magistrate Judge addressed the issues at bar in two
parts.  First with respect to the class certification, the
Magistrate Judge observed that joinder of all parties was
impossible because there is no way to determine how many lawful
permanent residents would be held at the INS Harlingen facility.
Magistrate Judge's Report and Recommendation ("R & R") at 6.
Then, the Magistrate Judge observed: "Due to the fact that
Respondents never addressed the issue of class certification in
their pleadings [sic], the allegations must be taken as
admitted."  _Id_. The Magistrate Judge then found that questions of
law and the claims made by the named Petitioners are common to
the class as a whole, and that, based on the guarantee of the
counsel for the Petitioners, the representative parties and their
counsel will  represent the interests of the class fairly and
adequately.  So finding, the Magistrate Judge concluded that the
Petitioners had satisfied Federal Rule of Civil Procedure 23(a).
R & R at 7.

Turning next to the constitutionality of Section 236(c), the
Magistrate Judge observed that the Third, Ninth and Tenth
Circuits have found Section 236(c) unconstitutional.  R & R at 8.
Citing to the most recent decision, the Ninth Circuit's decision

2

in Kim v. Ziglar, 276 F.3d 523 (9th Cir. 2002), cert. pending, the Magistrate Judge found that, given the wide range of crimes which would qualify a lawful permanent resident for detention under Section 236(c), there was no assurance that only those aliens most dangerous to the public would be detained under Section 236(c), i.e. the section did not meet the "special jusitification test" enumerated by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678, at 690 (2001).  Thus, the Magistrate Judge found that Section 236(c) violated the Petitioners' right to procedural due process, and did not need to address the Petitioners' substantive due process claims.  R & R at 10. Accordingly, the Magistrate Judge granted the habeas petition, granted the named class declaratory and injunctive relief, ordered a bond hearing for the named Petitioners within 10 days of the decision, and denied the motion to dismiss.  R & R at 11-12.

**THE STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1), a district court must engage in de novo review where a party has objected to a magistrate's decision.  U.S. v. Wilson, 864 F.2d 1219, at 1221 (5th Cir. 1989).  This standard applies in the review of the constitutionality of Section 236(c) in the case at bar.  In addition, as is discussed infra, the standard of review for the contested recommendation of class certification is also de novo.

3

**BACKGROUND: THE LEGISLATIVE IMPETUS OF SECTION 236(c).**

Congress enacted Section 236(c) of the Immigration and Nationality Act as a part of legislative reforms under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"). The legislative history shows that there were several legitimate purposes underlying Section 236(c): (1) to prevent criminal aliens from absconding so that they can be removed as required by law; (2) to protect the public from the presence of potentially dangerous criminal aliens; (3) to correct the failure of the prior bond procedures, under which more than 20 per cent of criminal aliens absconded prior to their proceedings; and (4) to repair the serious damage to the American immigration system caused by the Government's inability to detain criminal aliens pending deportation and remove them promptly.[1] The Senate Governmental Affairs Committee, for example, found that criminal aliens "often fail[ed] to appear for their actual deportation" and that in New York during fiscal year 1993, 88% of all aliens who were ordered to surrender for deportation absconded. S. Rep. No. 48, 104th Cong., 1st Sess. 24 (1995); see also id. at 23 (as of 1992, nearly 11,000 aliens convicted of aggravated felonies had failed to appear for their deportation hearings).

--------

[1] See S. Rep. No. 48, 104th Cong., 1st Sess. (1995) (1995 WL 170285 (Leg.Hist.) at 1-6, 9, 18-23).

4

The Constitutionality of Section 236(c).

Controlling Supreme Court precedent confirms that a reviewing court's inquiry into the constitutionality of an immigration statute like Section 236(c) is limited to determining whether the statute rationally relates to legitimate legislative ends. Carlson v. Landon, 342 U.S. 524, 532-33 (1952); see also Mathews v. Diaz, 426 U.S. 67, 82-83 (1976). Insuring that removable criminal aliens are available during their removal proceedings to facilitate a final administrative decision and expeditious removal, and preventing them from absconding or committing further crimes in the interim, are not only legitimate, but substantial and compelling, governmental goals.

Three years after it was passed, the constitutionality of Section 236(c) was sustained by the Seventh Circuit in Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999). In Parra, the Court held that mandatory pre-order detention does not impermissibly infringe on an alien's due process rights under the Fifth Amendment. 172 F.3d at 958. The Seventh Circuit's analysis weighed several critical factors: (1) the Government's compelling interests in lessening the risk of flight by an alien in removal proceedings whose removal was almost certain because of his serious criminal conviction; (2) the alien's diminished legal status as a person who is removable because of his criminal conviction; and (3) the alien's significantly curtailed

5

opportunity to avoid removal because of IIRIRA's legislative reforms, which made discretionary relief from removal largely unavailable for criminal aliens. Id. The Seventh Circuit ultimately concluded that the balance of these factors favored the Government, and that considering Congress's and the Executive Branch's plenary authority in the immigration arena, longstanding judicial precedent upholding the Attorney General's authority to detain aliens pending deportation proceedings, and Congress's express intent to expedite the removal of criminal aliens under the 1996 legislative reforms, Section 236(c) is constitutional. Id.

The Seventh Circuit also analyzed the constitutionality of Section 236(c) under the Mathews v. Eldridge due process standard. 424 U.S. 319 (1976). "The due process calculus . . . requires the court to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, with a thumb on the scale in favor of the statute's constitutionality." Parra at 958 (emphasis added). The Seventh Circuit resolved this issue in the Government's favor. The court described the private interest not as liberty in the abstract, but as liberty to remain "in the United States by someone no longer entitled to remain in this country but eligible to live at liberty in his native land . . . ."

Accordingly, the court concluded that Section 236(c) is
constitutional.

### ZADVYDAS V. DAVIS: THE SUPREME COURT'S STATUTORY RULING ON POST-ORDER DETENTION.

Following Parra, the Supreme Court issued a decision
concerning a sister provision to Section 236(c), namely,
Immigration and Nationality Act Section 241(a)(6), 8 U.S.C. §
1231(a)(6).  Section 241(a)(6) is dramatically different from
Section 236(c).  Section 241(a)(6) authorizes the Attorney
General to detain aliens who, unlike those aliens falling within
Section 236(c), have completed the immigration adjudication
process and have a final order of removal.  In Zadvydas v. Davis,
533 U.S. 678 (2001), the Supreme Court held that Section 241(a)
should be interpreted to authorize the Attorney General to detain
aliens, who have been ordered removed, for a reasonable period of
time following the entry of the final removal order, even when
their countries fail or refuse to promptly agree to their return.
Id. at 2505.

Although the Supreme Court's holding in Zadvydas is a
statutory holding on post-order detention, the three federal
circuit courts that have addressed the constitutionality of pre-
order detention under Section 236(c) since Zadvydas have relied
on the Supreme Court's decision to strike the statute as
violative of constitutional due process.  Hoang v. Comfort, No.
0-1136, 2002 WL 339348 (10th Cir. March 5, 2002), cert. pending;

7

Kim v. Ziglar, 276 F.3d 523 (9th Cir. 2002), cert. pending; Patel
v. Zemski, 275 F.3d 299 (3d Cir. 2001).[2]

One common denominator in the Third, Ninth, and Tenth
Circuits' decisions addressing the constitutionality of Section
236(c) is the conclusion that in all of the cases presented to
the courts, the pre-order detention under the provision
implicates a fundamental constitutional right that is protected
by the Due Process Clause. Hoang, 282 F.3d at 1256-57; Kim, 276
F.3d at 530; Patel, 275 F.3d at 307-10.  In all of the cases, the
courts relied on the Supreme Court's analysis in Zadvydas, and
cited the same factor enumerated in that case to support their
conclusion that, as applied in these cases, mandatory detention
implicates a fundamental right:  an alien's entry into the United
States gives rise to protection under the Fifth Amendment.
Hoang, 282 F.3d at 1255-56; Kim, 276 F.3d at 530; Patel, 275 F.3d
at 307.  Based on their conclusion that mandatory detention as
applied in these cases implicated the aliens' fundamental rights,
the courts determined that a heightened scrutiny, due-process
analysis was appropriate to ascertain whether their detention

---

[2] The Government has not petitioned for certiorari in the
Patel case; however, the Government has filed a petition for a
writ of certiorari in a similar unpublished case, Radoncic v.
Zemski, 2001 WL 1681643 (3d Cir. Jan 04, 2001) cert. pending, 70
USLW 3642 (Apr 04, 2002)(No. 01-1459).

violated the Fifth Amendment.[3]

One critical element of the Third, Ninth, and Tenth Circuits' decisions was their conclusion, in reliance on Zadvydas, that the plenary power doctrine was inapplicable. Hoang, 282 F.3d at 1257-58; Kim, 276 F.3d at 529-30; Patel, 275 F.3d at 308 & 314. All three of the courts' decisions acknowledged that Congress and the Executive Branch have almost complete authority in the immigration arena. However, the courts drew a distinction with respect to cases involving immigration detention that involve the "means by which Congress effects its determinations," and concluded that the courts need not defer to Congress's and the Executive Branch's choices in such cases. Patel, supra, at 308.

**BECAUSE THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION RELIES UPON THOSE CIRCUIT DECISIONS FINDING Section 236(c) UNCONSTITUTIONAL, WHICH DECISIONS IN TURN RELY UPON A MISREADING OF ZADVYDAS, THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION IS INCORRECT AND SHOULD BE REJECTED.**

There are several grounds supporting the Government's position that the court of appeals' decisions in Patel, Radoncic, Kim, and Hoang were wrongly decided.

In terms of the courts' legal analysis, the courts' reliance

_____

[3]Hoang, 282 F.3d at 1258-60; Kim, 276 F.3d at 530; Patel, 275 F.3d at 310-13. The Ninth Circuit also observed that even if it employed rational basis scrutiny to determine the statute's constitutionality, it would still find that the statute violates due process, because of the absence of procedures under Section 236(c) to protect the alien's liberty interests. See Kim, 276 F.3d at 536-37; but see 8 C.F.R. §§ 3.19 & 236.1 (2001).

on Zadvydas was incorrect.  In Zadvydas, the Court's holding turned on the conclusion that the INA's post-order detention statute, Section 241(a)(6), would authorize "indefinite," and "potentially permanent" detention, and that this circumstance was sufficient to raise doubts as to the provision's constitutionality.  Zadvydas, 121 S. Ct. at 2498.  Section 236(c), in contrast, is limited in its temporal scope.  As the Supreme Court recognized in Zadvydas, pre-order immigration detention is different from detention under the INA's post-order detention statutes for this very reason.  Zadvydas, 121 S. Ct. at 2499.

Section 236(c) reflects a Congressional decision that all criminal aliens covered by the provision present an unacceptable risk of flight or danger to the community.  The fact that the statute is based on a presumption that detention is required does not offend substantive due process or procedural due process. The Supreme Court has stated that the INS need not "forswear use of reasonable presumptions and generic rules."  Reno v. Flores, 507 U.S. 292, 313 (1993).  This conclusion should apply with equal, if not greater, force to Congress's decisions.  In Flores, the Supreme Court held that the INS needed only to make such individual determinations as were necessary for accurate application of the regulation at issue  Id.  Similar to the regulation in Flores, pursuant to Section 236(c) an alien

receives an individual determination of whether he in fact comes within the category of criminal aliens subject to mandatory detention.   Likewise, in <u>Carlson v. Landon</u>, 342 U.S. 524 (1952), the Supreme Court held that it was not necessary for the Attorney General to establish by specific evidence that an alien had engaged in specific acts of sabotage or incitement to subversion in order to detain the alien as a member of the Communist Party under the challenged statute.   <u>Id</u>. at 541.   Thus, controlling and authoritative Supreme Court precedent supports the use of presumptions in favor of immigration detention.   To the extent that the Third, Ninth, and Tenth Circuit decisions do not thoroughly address the similarities between Section 236(c) and the detention legislation and regulations addressed in <u>Carlson</u> and <u>Flores</u>, and the applicability of the Supreme Court's analysis to the mandatory detention cases, the Circuit Court decisions are subject to severe criticism.

Further, the Circuit Courts' suggestion, that Section 236(c) is different because it generally <u>requires</u> detention, ignores the statutory structure of Section 236.   The general rule in a pre-order detention case is that an alien in proceedings can be released; Section 236(c) creates the exception to the general rule.   Additionally, the Section 236(c) exception does not apply generally to all criminal aliens.   It applies only to aliens convicted of crimes that Congress considered serious enough to

11

warrant an alien's expeditious removal from the United States and detention pending that removal.

Insofar as the decisions cited by the Magistrate Judge in Hoang, Kim, and Patel rely heavily on a misreading of the Supreme Court's decision in Zadvydas, finding Section 236(c) unconstitutional in the case at bar is error. Zadvydas is a statutory, not a constitutional, ruling. Additionally, the Supreme Court's decision in Zadvydas addressed the very narrow issue of the "potentially permanent" and "indefinite" post-order detention of aliens who had been ordered removed, and whose countries refused to agree to their prompt repatriation. The factual circumstances in the pre-order detention context are different. In light of the inherent time limit to detention under Section 236(c), the circumstances that compelled the Court to conclude that post-order detention under the INA implicates a fundamental liberty interest are not present here, and do not compel the same conclusion.

Thus, given the substantial distinction between Sections 241(a)(6) and 236(c), and the well-articulated, legitimate governmental interests which the latter is tailored to meet, the Court should find that Section 236(c) is constitutional.

**CERTIFICATION OF A CLASS IS GENERALLY INAPPROPRIATE IN HABEAS PROCEEDINGS**

The power of a United States magistrate is governed by 28 U.S.C. § 636. Subsection (b)(1) of that statute provides that "a

12

judge may designate a magistrate to hear and determine any pretrial matter pending before the court, <u>except a motion</u> . . . <u>to dismiss or to permit maintenance of a class action</u>." The statute further provides that:  "A <u>judge</u> of the court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations <u>to which objection is made</u>."  28 U.S.C. § 636(b)(1)(emphasis added).  Thus, a magistrate judge may not <u>decide</u> a motion to certify a class and this Court reviews <u>de novo</u> the Magistrate Judge's <u>recommendation</u> that a class should be certified.

In the case at bar, the Magistrate Judge's Report and Recommendation recommends that the District Court certify the following class of litigants under Rule 23 of the Federal Rules of Civil Procedure: "all permanent residents who are, or will be, held by Respondents without bond in the Harlingen INS District, under the authority of 8 U.S.C. § 1226(c)(1)."  Given the nature of habeas corpus and its focus upon securing the liberty of an individual, in addition to the well-defined legislative considerations behind Section 236(c), certification of a entire class of persons "who are or will be" detained under Section 236(c) is inappropriate in the habeas corpus context.

The writ of habeas corpus historically has been used to review the legality of detention and its focus has been on affording relief to an individual in custody.  <u>INS v. St. Cyr</u>,

13

533 U.S. 289 at 290 (2001).  <u>See also</u> <u>Felker v. Turpin</u>, 518 U.S.

651 (1996).  The writ of habeas corpus gives a court power to

direct an official to "produce the body" of a person in custody

within the jurisdiction of the court issuing the writ.  <u>Barry v.</u>

<u>Brower</u> 864 F.2d 294 at 301 (3d Cir. 1998).  The writ of habeas

corpus "has been for centuries esteemed the best and only

sufficient defence of personal freedom."  <u>Ex parte Yerger</u>, 8

Wall. 85, 95, (1869).  Federal courts have been authorized to

issue writs of habeas corpus since the enactment of the Judiciary

Act of 1789, and the federal habeas statute provides that federal

judges may grant the writ of habeas corpus on the application of

a prisoner held "in custody in violation of the Constitution or

laws or treaties of the United States."  28 U.S.C. § 2241.

One of the principal criteria for applying the writ of

habeas corpus has been to secure the freedom of an <u>individual</u> in

custody:

> The custody requirement of the habeas corpus statute is
> designed to preserve the writ of habeas corpus as a
> remedy for severe restraints on individual liberty.
> Since habeas corpus is an extraordinary remedy whose
> operation is to a large extent uninhibited by
> traditional rules of finality and federalism, its use
> has been limited to cases of special urgency, leaving
> more conventional remedies for cases in which the
> restraints on liberty are neither severe nor immediate.

<u>Hensley v. Municipal Court, San Jose Milpitas Judicial</u>

<u>Dist., Santa Clara County, California</u> 411 U.S. 345, 351-52

(1973).  The very text of section 28 U.S.C. § 2241 sheds light on

14

the historical role of habeas corpus.   The remedy of habeas

corpus is targeted toward <u>individuals</u> <u>in</u> custody, not <u>classes</u> of

individuals who <u>may</u> be in custody:

> § 2241. Power to grant writ
>
> (c) The writ of habeas corpus shall not extend to a
> prisoner unless--
>
> (1) <u>He</u> is <u>in custody</u> under or by color of the authority
> of the United States or is committed for trial before
> some court thereof; or
>
> (2) <u>He</u> is <u>in custody</u> for an act done or omitted in
> pursuance of an Act of Congress, or an order, process,
> judgment or decree of a court or judge of the United
> States; or
>
> (3) <u>He</u> is <u>in custody</u> in violation of the Constitution
> or laws or treaties of the United States; or
>
> (4) <u>He</u>, being <u>a</u> citizen of a foreign state and
> domiciled therein is in custody for an act done or
> omitted under any alleged right, title, authority,
> privilege, protection, or exemption claimed under the
> commission, order or sanction of any foreign state, or
> under color thereof, the validity and effect of which
> depend upon the law of nations; or
>
> (5) It is necessary to bring <u>him</u> into court to testify
> or for trial.

(Emphasis added).   Some cases recognize that courts at times have

relaxed the custody requirement, addressing restraints upon

liberty in contexts other than criminal confinement.   See <u>Lehman</u>

<u>v. Lycoming County Children's Services Agency</u>,   458 U.S. 502

(1982).   However, as the history and jurisprudence of the writ

show, it is historically a drastic remedy to protect the liberty

of an individual then in custody by the government and NOT as a

means to prospectively legislate on the legality of detentions of unknown persons at some unknown point in the future. See Jones v. Cunningham, 371 U.S. 236, at 243 (1963), (the "grand purpose" of the writ is "the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty"); Carafas v. LaVallee, 391 U.S. 234 at 238 (1968) (the "province" of the writ "is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person").

Given the unique nature of habeas corpus and the individualized nature of it as a remedy, the imposition of a class for habeas litigation is unusual indeed. Rule 23 of the Federal Rules of Civil Procedure permits the certification of a class only if the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. Proc. 23(a).

Courts have recognized that class actions are generally inappliable in habeas litigation. Napier v. Gertrude, 542 F.2d 825 (10th Cir. 1976); United States ex rel. Sero v. Preiser, 506 F.2d 1115, 1125 (2d Cir. 1974), cert. denied, 421 U.S. 921 (1975);.

16

Given the history of habeas corpus as an extreme measure to secure the liberty of individual persons in custody, and the problems courts have recognized in litigating habeas petitions on a class basis, it is readily apparent that the recommended class certification in the case at bar is unworkable. The class directs the release of persons yet unknown and, according to the evidence, see Exhibit A, potentially outside the Harlingen District. In that respect, since the members of the class are unidentified, the proposed class does not take into account that some of the members, now or in the future, may have valid defenses to their removal charges and thus may not be subject to further detention. In that regard, the proposed class certification is too broad and too poorly defined to meet the requirements of either class action litigation or the writ of habeas corpus.

## IN DECIDING THE ISSUE OF CLASS CERTIFICATION, THE MAGISTRATE JUDGE MISAPPLIED THE FEDERAL RULES OF CIVIL PROCEDURE

The Federal Rules of Civil Procedure pertaining to class certifications do not apply to habeas corpus proceedings. Bijeol v. Benson, 513 F.2d 965 (7th Cir. 1975); United States ex rel. Sero v. Preiser, 506 F.2d 1115, 1125 (2d Cir. 1974), cert. denied, 421 U.S. 921 (1975). In the case at bar, the Magistrate Judge applied the Federal Rules in contravention of this fact, and compounded his error by applying to the government's motion

17

<u>to dismiss</u> a rule intended to apply to an <u>answer to a complaint</u>.

The Magistrate Judge mis-applied Rule 8(d) of the Federal Rules of Civil Procedure when he concluded that, because the Government did not specifically object to the motion for class certification in its motion to dismiss, the Government had thereby acquiesced to the motion for class certification. Citing Rule 8(d) as his basis, the Magistrate Judge wrote: "Due to the fact that the Respondents never addressed the issue of class certification in their pleadings, the allegations must be taken as admitted."  R & R at 6.

Rule 8(d) provides that any factual allegations in a pleading not answered in a responsive pleading are deemed admitted.  However, Rule 8(d) applies to <u>pleadings</u> under the Federal Rules, and as the rules themselves recognize, <u>motions</u> are not pleadings.  Pleadings are defined in Fed. R. Civ. P. 7 to include complaints, answers, replies to counterclaims, answers to cross claims, third party complaints, and third party answers. Fed. R. Civ. P. 7(a).  Motions, which are not pleadings, are discussed in Fed. R. Civ. P. 7(b).  <u>Knight v. U.S.</u> 845 F. Supp. 1372 (D. Ariz. 1993), <u>aff'd</u>, 77 F.3d 489 (9th Cir. 1996), <u>cert. denied</u> 519 U.S. 894 (1996).

The Fifth Circuit recognizes that an overly mechanistic application of Fed. R. Civ. P. 8(d) is unwarranted, particularly where the parties are on notice that certain facts are contested.

18

In _Trotter v. Jack Anderson Enterprises, Inc._, 818 F.2d 431, at

436 (5th Cir. 1987), the failure of newspaper columnist to deny

allegations of actual malice in a defamation complaint filed by

the president of a Guatemalan soft drink bottling company did not

require a determination that the newspaper columnist admitted

actual malice.  The columnist's motion for summary judgment,

while not a "pleading" responsive to the complaint, gave the

president plain notice that the question of actual malice was a

matter to be litigated, and thus, the columnist's failure to file

an answer could not serve as a ground for reversal of the trial

court's decision that the president failed to establish the

columnist's actual malice.  The Court wrote:

> Courts have applied Rule 8(d) in order to avoid unfair
> surprise by the party who failed to file a responsive
> pleading. . . .  The Federal Rules were adopted to
> ensure that pleadings would facilitate a decision on
> the merits.  They "reject the approach that pleading is
> a game of skill in which one misstep by counsel may be
> decisive to the outcome."

818 F.2d 431 at 436, _quoting_ _Conley v. Gibson_, 355 U.S. 41, 48

(1957).  _Trotter_ is persuasive authority for the proposition that

failing to specifically and separately oppose a class

certification, in a motion to dismiss a habeas petition, should

not be taken as a joinder in the class certification motion.

Since the Court and the parties were on notice that the motion

for class cert was contested -- by its designation as an "opposed

motion," by counsel's statement on the record that the motion was

19

opposed, and by the conspicuous motion to <u>dismiss</u> the <u>entire</u> habeas cause of action -- it was error for the Magistrate Judge to apply Rule 8(d) as he did.

**THE BREADTH OF THE CLASS IS ESPECIALLY DAMAGING DUE TO THE UNIQUE NATURE OF HARLINGEN AS A PROCESSING POINT FOR ALIENS IN CUSTODY, WHICH HAS THE EFFECT OF BROADENING THE CLASS WELL BEYOND THE GEOGRAPHICAL AREA OF HARLINGEN**

The recommended class certification is especially damaging with respect to the Harlingen District due to the unique nature of Harlingen as a processing point for aliens in custody awaiting removal hearings. For this reason, the class certification should be denied as a matter of discretion. <u>Amchem Products v. Windsor</u>, 521 U.S. 591, at 630 (1977); <u>Berger v. Compaq Computer Corp.</u>, 257 F.3d 475, at 478 (5th Cir. 2001). As the attached declaration of Aaron L. Cabrera (Exhibit A) demonstrates, the Harlingen District's proximity to the Mexican border makes it a logical place for the detention of aliens who will be removed to Mexico. While most of the criminal aliens detained under Section 236(c) in Harlingen are from the Rio Grande valley, some are not, but come from other parts of Texas[4]. Because the class certification is prospective it presumably applies to any criminal Mexican, whether he or she is from Houston, Dallas or elsewhere, upon arrival in Harlingen. Thus, the operation of the

---

[4] In this respect, it is important to note that, pursuant to the request of the petitioners, the Magistrate Judge did not intend to certify a state-wide class. Transcript at 9.

class certification as written is drastically different from the individualized remedy that habeas corpus provides. Rather than addressing the detention of a single individual now in custody, the magistrates's proposed class certification and order would wipe out Section 236(c) for all persons now outside of Harlingen who will be in Harlingen in the future. The "class" is numerically and temporally unlimited, and its breadth cannot adequately be determined. To the extent that the class may extend beyond the jurisdiction of Harlingen, it cannot be certified for this reason alone. See, e.g., Yi v. Maughans, 24 F.3d 500 (3d Cir. 1994)(proposed class of Chinese aliens and their custodians could not be certified where it included aliens or custodians who were not in the judicial district); Wang v. Reno, 862 F. Supp. 801 (E.D. N.Y. 1994)(It was inappropriate for district court to exercise jurisdiction over petition for habeas relief by alien who was located within state but outside district court's district).

### CERTIFICATION OF A CLASS IS INAPPROPRIATE WHERE THE DIFFERING CLASS MEMBERS DO NOT ADEQUATELY REPRESENT EACH OTHER

Finally, even assuming the Federal Rules of Civil Procedure were applicable to habeas cases, the proposed class certification does not meet the criteria of Rule 23(a)(4). That rule requires that in any class certification, "the representative parties will fairly and adequately protect the interests of the class."

21

Because the class certification addresses only the geographic location of the aliens and not their individual status, the certification does not meet the requirements of Rule 23(a)(4). A person convicted of possessing illegal firearms and who is suspected of having terrorist affiliations is put on the same legal footing as a person convicted of possessing cocaine. Recalling that Section 236(c) was enacted by Congress to meet the compelling needs of ensuring public safety and effectively removing criminal aliens, ordering a bond hearing for ALL criminal aliens now and in the future offends the purpose of the class. To the extent that the merits of the cases of a suspected terrorist are not those of the case of a drug possessor, it contravenes the purpose of Rule 23(a)(4) to treat them as equals -- simply because the drug possessor can not adequately represent the suspected terrorist.

Both alien petitioners in the case at bar -- Eugenio Reyna-Montoya and Juan Luis Gonzalez-Sanchez -- are similar to each other but are not representative of all members of the class as the Magistrate Judge defines it. As the Magistrate Judge noted in his report and recommendation, both have convictions for simple possession of marijuana, both received deferred adjudication, neither received confinement as a result of their deferred adjudications, and both appeared for their court hearings. To conclude that these two individuals are

representative of the class of all criminal aliens largely
ignores the spectrum of criminal offenses to which Section 236(c)
applies and ignores the Congressional mandate of Section 236(c)
to secure the availability of alien absconders.

In addition, though many of the proposed class are
aggravated felons, some may not be.  The petitioners devote a
considerable portion of their habeas petition contending that Mr.
Reyna may not be an aggravated felon because his deferred
adjudication may not be a final conviction, citing Matter of
Manrique, 21 I&N Dec. 58 (BIA 1995).  To that extent, petitioner
argues, the logic of Parra v. Perryman, supra, does not apply,
because he is not "dragging out the inevitable."  Petition at
third page (unnumbered).

This is precisely where petitioner's argument for
commonality fails.  As the attached declaration of Aaron Cabrera
(Exhibit A) demonstrates, the spectrum of aliens in Harlingen
includes aliens convicted of other offenses -- sexual offenses,
murder, etc. -- for which such relief may not be applicable.[5]  It
therefore is obvious that there is not a commonality of interest

---

[5]Indeed, as a recent BIA decision notes, the adoption by the
Board of uniform standards of defining the term "aggravated
felony," as that term is defined in 8 U.S.C. § 1101(a)(43)(B),
may offer relief for some aliens convicted of drug possession
crimes.  Matter of Santos-Lopez, 23 I&N Dec. 419 (BIA 2002)
(multiple drug possession offenses each classified as a
misdemeanor under Texas law do not individually or in the
aggregate constitute an aggravated felony).

among all present and future 236(c) detainees in Harlingen, and therefore, certifying a class based on the non-existent commonality of legal postures among all present and future members of the class upsets the purposes behind the requirement. Simply put, if the petitioners are not aggravated felons, they cannot represent a class of aggravated felons.

Thus, the proposed class certification fails to meet the requirements of Rule 23(a)(3) of the Federal Rules of Civil Procedure. The two individuals before the Court are not typical or representative of all criminal aliens held now or in the future pursuant to Section 236(c). Nor, the respondent contends, can any two aliens share the same characteristics sufficient to present the commonality required under Fed. Rule. Civ. Proc. 23.

24

## CONCLUSION

The Court should find that Section 236(c) is constitutional as a vital measure to effectuate the intent of Congress to remove criminal aliens. In addition, the Court should not adopt the Magistrate Judge's recommendation to certify all present and future permanent resident aliens held in Harlingen as a class for the purpose of habeas litigation of Section 236(c).

Respectfully submitted,

ROBERT D. McCALLUM, Jr.
Assistant Attorney General
Civil Division

RICHARD M. EVANS
Assistant Director

LISA M. Putman

for PAUL FIORINO, Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
(202) 353-9986

Dated: May 28, 2002

25

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2002, a copy of the foregoing **"OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATIONS"** was served upon petitioner's counsel by causing it to be placed in the Department of Justice mailroom in sufficient time for same day mailing, first class postage prepaid, and addressed to:

Lisa Brodyaga, Esq.
17891 Landrum Park Rd.
San Benito, TX 78586

_LISA M. Putnam_

PAUL FIORINO, Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 353-9986

# EXHIBIT A TO
# OBJECTION TO MAGISTRATE
# JUDGE'S REPORT AND
# RECOMMENDATIONS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| EUGENIO REYNA-MONTOYA, ET AL., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | CIVIL ACTION NO. B-02-026 |
| v. | ) | |
| | ) | |
| E.M. TROMINSKI, | ) | |
| INS DISTRICT DIRECTOR | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**DECLARATION OF AARON L. CABRERA**

1.   I am Acting Assistant Director for Detention and Removal for the Immigration and Naturalization Service in Harlingen, Texas.   I have administrative responsibility over the petitioner, Mr. Eugenio Reyna-Montoya, who is in INS custody in the Harlingen, Texas, district awaiting immigration removal hearings.

2.   The Harlingen facility currently has 39 aliens detained under the provision of Section 236(c) of the Immigration and Nationality Act, 18 U.S.C. §1226(c).

3.   Harlingen occupies a unique position close to the Mexican Border which facilitates the removal of deportable aliens to Mexico.   Because of its geographic location, Harlingen acts as a collection point for Mexican and Central American aliens who remain in custody pending their removal hearings and/or appeals.

4.   Harlingen receives approximately 1-5 new aliens per week who are held under §236(c).   It is estimated that, over the course of a year Harlingen will receive and house approximately 200 to 250 aliens to be held under §236(c).

5.   Although most of the aliens detained in Harlingen under §236(c) are from the Rio Grande valley, Harlingen occasionally receives aliens from other parts of the United States.   For example, in the past year, Harlingen has housed aliens under §236(c) from the following cities: Houston, Philadelphia, Chicago, Dallas, and St. Paul, Minnesota.

6.    At any given time, approximately 10 to 20 % of the aliens held in Harlingen actually were apprehended outside the Rio Grande valley and were transferred here for detention and hearings.

7.    The types of crimes of which such aliens are convicted range from simple possession of a controlled substance, to murder, manslaughter, and sexual assault of a minor.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 24, 2002, in Harlingen, Texas.

_____

Aaron L. Cabrera